# SUMNER, WARDEN v. MATA

No. A–882 (79–1601).   Decided May 1, 1980

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicant seeks to stay the mandate of the United States Court of Appeals for the Ninth Circuit under which a writ of habeas corpus would issue unless the State of California grants respondent Robert Mata a new trial on the charge of murder.   See *Mata* v. *Sumner,* 611 F. 2d 754 (1979).   On April 15, 1980, I temporarily stayed that mandate pending consideration of a response to the application and further order, in order to see whether there was a conflict among the Courts of Appeals or a substantial doctrinal difference from cases decided by this Court that would distinguish this decision from the numerous mine-run decisions on the reliability of identification that could not possibly be individually reviewed by this Court.

In 1972 respondent, then a prisoner at a medium-security

prison in Tehachapi, Cal., was charged with the murder of another prisoner, Leonard Arias. While investigating the murder, prison officials showed two prisoners who had witnessed the killing a series of photographic arrays containing pictures of respondent and his two alleged accomplices. Without recounting the details of each display, see *id.*, at 755–757, it suffices to say that the two witnesses eventually selected respondent's photograph from the arrays and subsequently identified him at trial as one of the persons involved in the killing.

On direct appeal from his conviction, respondent challenged the pretrial identification procedures and claimed they tainted the subsequent in-court identifications. The California Court of Appeal rejected this challenge, finding that there had been "no showing of influence by the investigating officers; that the witnesses had an adequate opportunity to view the crime; and that their descriptions [were] accurate." App. to Pet. for Cert. C–4—C–5. The California courts also rejected respondent's petition for a writ of habeas corpus, which petition similarly challenged the identification procedures employed by prison officials.

On respondent's subsequent petition for a federal writ of habeas corpus, the District Court concluded that, although "irregularities occurred in the pre-trial photographic identification" of respondent, those irregularities "did not so taint the in-court identifications . . . as to establish a constitutional violation. . . ." *Id.*, at D–3.

A divided panel of the United States Court of Appeals for the Ninth Circuit reversed. In evaluating the admissibility of the in-court identifications, the majority of the Court of Appeals employed a "two-part approach." First, it considered whether photographic identification, as opposed to a lineup, was necessary under the circumstances. It answered this inquiry in the negative. Second, the majority inquired "whether there was a very substantial likelihood of irreparable

misidentification" due to the less-than-ideal procedures employed. It answered this inquiry in the affirmative. In summarizing this latter holding, the court clearly indicated that it considered the feasibility of a lineup a significant factor in its determination:

> "Based upon the lack of necessity [for a photographic array], the diversion of the witnesses' attention at the time the crime was committed, the hazy and very general description of the appellant [by one of the witnesses], and the inescapable focusing of attention upon the [respondent] by the investigating authorities, we are driven to the conclusion that the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 611 F. 2d, at 759.

In his petition for a writ of certiorari, applicant contends that the majority of the Court of Appeals gave undue weight to the failure of the prison officials to employ a lineup as opposed to a photographic array in the present case. To the extent that the Court of Appeals did overturn respondent's conviction because it believed that "less suggestive" procedures were available, I believe that its decision ignores this Court's indication in *Manson* v. *Braithwaite*, 432 U. S. 98, 114 (1977), holding that reliability, not necessity, is the "linchpin in determining the admissibility of identification testmony . . . ," a conclusion in turn derived from our decision in *Neil* v. *Biggers*, 409 U. S. 188, 199–200 (1972). The decision of the majority of the Court of Appeals in this regard would also seem to conflict with *United States* v. *Gidley*, 527 F. 2d 1345 (CA5), cert. denied, 429 U. S. 841 (1976), where the United States Court of Appeals for the Fifth Circuit stated that the availability of less suggestive methods of identification is "not relevant" in determining whether a photographic display is impermissibly suggestive. 527 F. 2d, at 1350.

Two arguments offered by respondent merit brief mention. First, respondent asserts that the Court of Appeals' "two-part approach" incorporates the necessity of a challenged procedure only in determining whether that procedure, although suggestive, was nevertheless constitutionally permissible given the exigencies of the situation. A close reading of the appellate court's opinion, however, belies that interpretation, and demonstrates instead that the court considered the availability of less suggestive procedures an "important factor" in determining the reliability of the procedures actually employed. See 611 F. 2d, at 757, 759. Second, respondent suggests that this Court has declined on several prior occasions to review the two-part approach employed in the Ninth Circuit. See *United States* v. *Crawford,* 576 F. 2d 794 (CA9), cert. denied, 439 U. S. 851 (1978); *United States* v. *Pheaster,* 544 F. 2d 353 (CA9 1976), cert. denied, 429 U. S. 1099 (1977); *United States* v. *Calhoun,* 542 F. 2d 1094 (CA9 1976), cert. denied *sub nom. Stephenson* v. *United States,* 429 U. S. 1064 (1977); *United States* v. *Valdivia,* 492 F. 2d 199 (CA9 1973), cert. denied, 416 U. S. 940 (1974). In addition to the hazards of reading any meaning into this Court's denials of certiorari, I would also note that each of the aforecited cases came to this Court after the Court of Appeals had upheld the identification procedures there employed. We thus were not presented with opportunities to consider the relevance of the feasibility of less suggestive procedures to a determination that the procedure actually employed was unconstitutionally suggestive.

In this case the Court of Appeals rejected the uniform conclusion of several state courts and another federal court that the identification procedures employed here were not so suggestive as to taint the witnesses' in-court identification of respondent. Given the tension between the analysis employed by the majority of the Court of Appeals for the Ninth Circuit in this case and our decisions in *Manson, supra,* and

*Neil, supra,* and given the apparent conflict between the decision of the Court of Appeals for the Ninth Circuit in this case and the decision of the Court of Appeals for the Fifth Circuit in *Gidley, supra,* I have decided to grant applicant's request for an order staying the mandate in *Mata* v. *Sumner* (the present case), 611 F. 2d 754 (CA9 1979), cert. pending, No. 79–1601, because I am of the opinion that four Members of this Court are likely to vote to grant certiorari in that case when presented. As nearly as I can determine, that case should be considered by the Court on certiorari in the near future, and the stay which I am presently issuing shall expire without further action of the Court in the event that certiorari is denied. If certiorari is granted, the stay shall remain in effect until final disposition of the case or further order of the Court.

Accordingly, the application for the stay of mandate of the United States Court of Appeals in this case is

*Granted.*