**James W. BROWN, Plaintiff-Appellant,**

v.

**David R. HARRIS, Superintendent, Greenhaven Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Defendants-Appellees.**

No. 221, Docket 81–2139.

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1981.

Decided Dec. 7, 1981.

Certiorari Denied April 26, 1982. See 102 S.Ct. 2017.

---

from a fair cross-section of the community and that he was denied due process by the voice identification testimony of two officers at his trial. We find both contentions without merit.

I

Appellant's argument regarding the venire from which his jury panel was drawn is that persons between the ages of 18–28 were unconstitutionally excluded. Appellant rests his claim primarily on *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), which held that in order to establish a prima facie violation of the fair cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364, 99 S.Ct. at 668. See also *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

This challenge was the subject of an evidentiary hearing in the state courts and was rejected in a written opinion by Judge Isaac Rubin on the ground that appellant had failed to prove that the alleged exclusion was intentional or systemic. In denying the writ, Judge Leval appeared to agree with this conclusion but did not rest upon it; instead, he denied relief on the ground that "the underrepresentation was not of a 'distinctive' group in the community...."

Steven Lloyd Barrett, The Legal Aid Society, Federal Defender Services Unit, New York City, for plaintiff-appellant.

Robert K. Mekeel, Asst. Dist. Atty. of Westchester County, White Plains, N. Y. (Carl A. Vergari, Dist. Atty. of Westchester County, John R. Dinin, Anthony J. Servino, Asst. Dist. Attys., White Plains, N. Y., of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, and TIMBERS and MESKILL, Circuit Judges.

FEINBERG, Chief Judge:

James W. Brown, a state prisoner, appeals from a decision of the United States District Court for the Southern District of New York, Pierre N. Leval, J., denying appellant's petition for a writ of habeas corpus. Appellant had been convicted in 1975 of kidnapping in the first degree and related crimes. He is now serving a sentence of 25 years to life on the former charge and lesser, concurrent sentences on the latter. Appellant challenges his detention on the grounds that he was denied his Sixth Amendment right to a venire drawn

■ The question whether young people, variously defined, are a "distinctive" group under *Duren* and *Taylor* has been much bruited about in the federal courts. The weight of authority is in the negative, see, e.g., *United States v. Ross*, 468 F.2d 1213, 1217 (9th Cir. 1972), cert. denied, 410 U.S. 989, 93 S.Ct. 1500, 36 L.Ed.2d 188 (1973); *United States v. Kuhn*, 441 F.2d 179, 181 (5th Cir. 1971); *United States v. DiTomma-*

*so,* 405 F.2d 385, 391 (4th Cir. 1968), cert. denied, 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (1969), but see *United States v. Butera,* 420 F.2d 564, 570 (1st Cir. 1970). This circuit has not ruled after *Duren* on whether young people can be regarded as a distinctive group for this purpose, although we have in the past certainly indicated sympathy with the majority view. See *United States v. Guzman,* 468 F.2d 1245, 1247 n.5 (1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973). We see no need to decide this general proposition because we agree with Judge Leval that there was no evidence in the record "concerning the nature of the group" and "no basis for a finding that it shared any special cohesion or similarity of interests."

■ Moreover, we agree with the state judge that any exclusion was not systematic within the meaning of *Duren.* When appellant challenged the jury selection system in August 1974, persons under the age of 21 were not then eligible for jury service. A statute lowering the eligibility age to 18 took effect on September 1, 1974, as Judge Leval noted, and petitioner was actually tried a few months later with no 18–21 year olds on the venire. However, as Judge Leval also noted, testimony at the state hearing indicated that "in accordance with usual practice, the existing drums of jurors' names drawn prior to September 1, would be exhausted before the newly drawn drums including 18–21 year olds would be used." Under these circumstances, the exclusion of 18–21 year olds cannot be considered systematic because the problem of introducing newly eligible jurors is the sort of concern that makes "some play in the joints of the jury-selection process . . . necessary. . . ." *Hamling v. United States,* 418 U.S. 87, 138, 94 S.Ct. 2887, 2917, 41 L.Ed.2d 590 (1974). See also, *United States v. Guzman,* supra. Under *Hamling* and *Guzman,* review of the system must be tempered with concern for what is administratively practical and convenient.

■ With regard to the 21–28 year olds, the state judge justifiably found that there was no automatic exclusion of this group. There was an underrepresentation because many in this category were excused from jury service at their request, because they were attending school or, in the summer months, were looking to earn tuition. This non-automatic exclusion can be justified under *Duren* by a showing that the exclusion advances a significant state interest, 439 U.S. at 370. We have no doubt that a state's interest in a well-educated citizenry is a concern that justifies this sort of exclusion, *United States v. Duncan,* 456 F.2d 1401, 1405 (9th Cir.), vacated on other grounds, 409 U.S. 814, 93 S.Ct. 161, 34 L.Ed.2d 72 (1972). Cf. *United States ex rel. Chestnut v. Criminal Court of New York,* 442 F.2d 611, 618 (2d Cir.), cert. denied, 404 U.S. 856, 92 S.Ct. 111, 30 L.Ed.2d 98 (1971) (exclusion of jurors below the age of 35 justified on the ground that the state can take advantage of older persons' greater experience; pre-*Duren*).[1] In short, appellant's claim that the venire for his state trial was constitutionally defective was, on this record, without merit.

## II

Appellant also argues that the use of voice identification testimony at his trial denied him due process. It appears from Judge Leval's opinion that the following occurred before and at appellant's trial: After his indictment in this case for kidnapping and after the appearance of his counsel, Brown was arrested on different and unrelated charges. He was interviewed in connection with these new charges several times; most of the interviews were conducted outside the presence of counsel and without a waiver of his right to counsel.[2]

1. Appellant relies on our dictum in *Anderson v. Casscles,* 531 F.2d 682, 686 (2d Cir. 1976) that the exclusion of students might be constitutionally impermissible. But that language merely left open the question whether the absence of students could be tolerated.

2. Another interview was held subject to the condition that the conversation would be considered confidential and could not be held against Brown. The trial judge cautioned the witnesses not to base their testimony on information obtained in the course of this interview.

Shortly thereafter, two of the interviewing officers were called to the district attorney's office, where they listened to a tape of the ransom demand recorded at the time the crime was committed, and identified Brown's voice on it. At the close of the trial, these officers were called to testify about their identification. No notice was given to appellant prior to calling these witnesses. He was, however, aware of the existence of the tape because he had been notified of audibility hearings that were conducted to determine its admissibility.

■ Appellant advances several reasons why it was reversible error to admit this evidence. He first contends that the voice identification violated his Sixth Amendment rights. He apparently argues that under the authority of *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), the voice identification must be excluded because the witnesses gained familiarity with his voice at interviews conducted in the absence of his attorney. Both parties admit that the interviews were connected with an investigation unrelated to the kidnapping. Moreover, the officers at the time did not know about the ransom tape, did not speak to appellant in order to identify his voice and played no role in the investigation of this case until they were asked to listen to the ransom tape. Under the circumstances, *Brewer v. Williams* is not apposite.

■ Next, appellant claims that it was reversible error to admit the identification testimony without giving him advance notice. Brown cites a New York statute, N.Y. Crim.Proc.Law § 710.30 [3] for the proposition that the State must serve pretrial notice of an intent to offer testimony identifying a defendant. While it is arguable that this statute is applicable here, we do not reach that issue. Brown cites no case indicating that this statute, or that a notice requirement in general, is constitutionally mandated.[4] Nor is a pretrial hearing needed, as appellant contends, before allegedly tainted identification testimony is adduced, *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 659, 66 L.Ed.2d 549 (1981) ("While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process," citing Judge Leventhal's concurring opinion in *Clemons v. United States*, 408 F.2d 1230, 1251 (1968)).

■ Finally, appellant maintains that the evidence is inadmissible because it was tainted by the suggestive circumstances under which the witnesses identified Brown's voice. Analogizing the identification procedure used here to a single photo show-up, Brown claims that the likelihood of error, which is said to require stringent constraints on identifications from photographs, *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), was present here. Appellant contends that when the officers were brought to the district attorney's office to hear the ransom tape, the officers knew that their visit was connected with appellant. Furthermore, all agree that only one voice on

---

3. At the time, § 710.30 provided in relevant part that:

    1. Whenever the people intend to offer at a trial . . . testimony identifying a defendant as a person who committed the offense charged, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

    2. Such notice must be served before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial . . . to suppress the specified evidence. . . .

3. In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial. . . .

4. Judge Leval ruled that the statute was not on point because "the proposed testimony was not identification testimony in its usual sense, in that the officers would not testify as to their personal knowledge of petitioner's involvement in the crime." We do not reach the state-law issue of the statute's application to a marginal situation such as this one. As Judge Leval also noted, "no constitutional right of petitioner" was violated.

the tape was making ransom demands; the officers had no special experience with voice identification; neither had ever heard appellant's voice on the telephone or as recorded on tape.

To resolve this claim, we must first decide whether the analogy drawn by appellant is a valid one. We have not, in the past, been receptive to this line of reasoning. In *United States v. Albergo*, 539 F.2d 860, 864 (2d Cir.), cert. denied, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976), we stated that "the requirements for voice authentication do not differ markedly from those for document authentication. Once a prima facie case of authorship is made out by the proponent of the evidence, the testimony is admissible; and the reliability ... is for the jury." [5] We did, however, go on to leave open the possibility that "there might be some conceivable circumstances in which appellant's due process contentions would have merit...." Id. Moreover, in *United States v. Moore*, 571 F.2d 76, 90–91 (2d Cir. 1978), we applied due process standards to identification of a voice on a ransom tape, albeit without discussion of *Albergo*.

However, even if we assume arguendo that a tape-recording is analogous to a photograph in this context, see *United States v. Pheaster*, 544 F.2d 353, 369–70 (9th Cir. 1976), cert. denied sub nom. *Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), reversal is not justified here. Under the applicable analysis, which is set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the first question is whether identification took place under suggestive circumstances. Appellant claims that the officers came to the district attorney's office with "an aura of expectancy," *United States v. Leonardi*, 623 F.2d 746, 754 (2d Cir.), cert. denied, 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980), that stemmed from the fact that they knew the visit was to concern Brown. In contrast, appellees maintain that the witnesses were not informed before their visit that they would be called upon to identify Brown's voice. We need not resolve this factual dispute, however, because even if appellant's version of the officer's expectations is wrong, the process might still seem essentially equivalent to the single photograph identification criticized in dictum in *Simmons v. United States*, 390 U.S. at 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247, see *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). At oral argument, counsel for the State urged that since there were several voices on the tape, the procedure was more akin to a photo array. However, only one voice on the tape was demanding money. If listening to this tape is equivalent to a photo array, which we do not decide, then we must look upon it as if the photograph of the defendant showed him in the act of committing the crime, which all would agree is highly suggestive.

But under the *Neil v. Biggers* test, suggestiveness is not enough: If the court is convinced that a witness's knowledge is so firm that he is not susceptible to suggestion, then his testimony can be received at trial. Witnesses who listen to a crime that has been "memorialized on tape," *United States v. Aiken*, 481 F.Supp. 37, 38 (S.D.N.Y.), aff'd mem., 639 F.2d 769 (2d Cir. 1980), cert. denied, 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981), are in a position to offer uniquely reliable testimony. They are not eye witnesses in the traditional sense. Rather, they have the luxury of listening to the tape in an office, where they can devote their full attention to it, see *Aiken*, supra. Moreover, the witnesses here were trained police officers who heard the tape not long after interviewing Brown, with whom they had spent many hours. Considering the totality of the circumstances, we cannot say that the officers' testimony must be set aside as unreliable. Other courts that have considered the identification of voices on ransom tapes have arrived at similar results, *United States v. Moore*, supra; *United States v. Pheaster*, supra.

---

5. Cf. *O'Neal v. Morgan*, 637 F.2d 846 (2d Cir. 1980), cert. denied sub nom. *Esty v. O'Neal*, 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981) (admission of voice identification in civil suit is controlled by Fed.R.Evid. 901(a)).

Finally, even if we had decided that the voice identification evidence should have been excluded, we still would not disturb the judgment of the district court. In the context of this case, any such error was harmless. Brown stood trial for the kidnapping of Carmine Tripodi, a known figure in illegal gambling, who had admitted to the district attorney that he had, on occasion, bribed police. There was no dispute about the essential facts in the case. The abduction was observed by two children, who testified at the trial. The co-defendants were arrested in the act of committing the crime: one when he picked up the ransom money, and the other when the victim was found. Tripodi testified that he had been "able to observe" the third abductor for "15, 20 hours," and identified Brown as that person.

Under the circumstances, the additional evidence offered by the police officers was cumulative. The testimony of a victim who has spent a day with his abductor does not need corroboration. While it is true that the procedures used here to elicit Tripodi's testimony might also be considered suspect, the inherent reliability of it would allow the evidence to come in under *Neil v. Biggers*, supra. Appellant points to Tripodi's criminal record, but this is insufficient in itself to exclude his testimony. Appellant did not give the jury sufficient reason to believe that the victim was motivated to perjure himself for the district attorney.

We have carefully reviewed appellant's other contentions and find them to be without merit. The judgment of the district court is affirmed.