Edward VOURAS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 17, 1982.
Decided: Nov. 3, 1982.

Alfred J. Lindh, Lindh & Halberstadt, Wilmington, for defendant below, appellant.

Ralph K. Durstein, III, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

MOORE, Justice:

In this appeal, the defendant, Edward Vouras, seeks reversal of his convictions of Advancing Gambling in the First Degree [11 *Del.C.* § 1403(1)] and Conspiracy in the Third Degree (11 *Del.C.* § 511) on the grounds that (1) the identification of his voice in a series of intercepted telephone conversations was unnecessarily suggestive and inherently unreliable; (2) the tapes of the conversations were not properly authenticated under Delaware Rule of Evidence 901; and (3) the Superior Court erroneously denied the defense motion for judgment of acquittal. As explained below, we affirm his convictions.

· I.

In January 1980, Detective Richard S. Strycharz of the Delaware State Police and other officers were investigating sports gambling in Wilmington. Pursuant to court authorization under 11 *Del.C.* § 1336, the police intercepted phone conversations of various suspects. In several conversations, one of the speakers was referred to as "Cuckoo". Though the police, through the suspects' use of other nicknames (e.g., "Ed", "Eddie", "the Greek") and references to "Eddie" on records of money transactions, suspected Vouras' involvement, they were unable to identify "Cuckoo".

Early in 1981, Strycharz learned that a Wilmington police officer, Lieutenant Joseph Pennell, could identify Vouras' voice and knew "Cuckoo" to be a nickname of Vouras'. Pennell had previously identified Vouras' voice during a gambling investigation in 1975. In addition, between 1966 and 1972, Pennell and Vouras were assigned to the same National Guard unit. While the two men did not work side by side or socialize during that time, Pennell did hear Vouras speak several times.

Strycharz, in March 1981, invited Pennell to listen to the recorded conversations between "Cuckoo" and other suspects. At the suppression hearing, Strycharz testified that his superior, Captain Szymanski, telephoned Pennell and told him that the State Police would like Pennell to listen to the recorded conversations to determine whether an unidentified voice, thought to be that of Vouras, was actually Vouras'. During the trial, Strycharz initially testified that no one had told Pennell of the suspected identity of the speaker; on cross-examination, Strycharz admitted that his testimony at the suppression hearing did in fact reflect the actual situation. Pennell testified at both the suppression hearing and at trial that Szymanski had told him that the unknown voice was suspected to be that of Vouras. Another State Police detective, Raymond Hancock, corroborated Pennell's account. When Pennell arrived at the state police troop, however, Vouras' name was not mentioned before Pennell listened to

the tapes. In order to give his full attention to listening to the tapes, Pennell did *not refer* to transcripts of the tapes while listening to them. Pennell was unable to identify anyone on the first tape,[1] but he identified Vouras' voice on all of the other tapes.

The sole issue at trial was Pennell's ability to identify "Cuckoo's" voice as that of Vouras. In an attempt to impeach Pennell, the defense prepared recorded studio dramatizations of the conversations, with various people, including Vouras, reading the lines of "Cuckoo". Pennell was recalled to the stand to identify Vouras' voice in these recordings, but he was unable to correctly identify the speakers on any tape. The jury, having heard the intercepted conversations and the defense-prepared tapes, found Vouras guilty of two counts of Advancing Gambling in the First Degree and one count of Conspiracy in the Third Degree.

### II.

### A.

■ Vouras first argues that the circumstances under which Pennell made the pretrial identification were so impermissibly suggestive as to require the exclusion of Pennell's testimony at trial. Vouras contends that the due process standards applicable to a visual identification of a defendant[2] should be extended to this situation. The United States Court of Appeals for the Ninth Circuit, relying on *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972), has concluded in a case factually similar to this case that "the possi-

bility of 'irreparable misidentification' is as great when the identification is from a tape recording as when it is from a photograph or a line-up ... [and] that the same due process protection should apply to either method." *United States v. Pheaster,* 544 F.2d 353, 369 (9th Cir.1976).

This analogy between visual and voice identifications has been criticized, *Brown v. Harris,* 666 F.2d 782, 786 (2d Cir.1981); *United States v. Albergo,* 539 F.2d 860, 864 (2d Cir.1976), but its critics have admitted that "there might be some conceivable circumstances in which [an] appellant's due process contentions would have merit." *Albergo,* 539 F.2d at 864. *See United States v. Moore,* 571 F.2d 76, 90–91 (2d Cir.1978). In addition, we do not believe, in contrast to the Second Circuit in *Albergo,* that applying due process safeguards to voice identifications would vitiate the pertinent authentication requirements of Delaware Uniform Rules of Evidence 901–03.[3] In our view, the due process standards and the authentication requirement of Delaware Rule of Evidence 901 are distinct, as in other situations in which constitutional and evidentiary rules, e.g., the Confrontation Clause of the Sixth Amendment and the hearsay rule, simultaneously control the admissibility of evidence. We therefore agree with the view expressed by the Ninth Circuit in *Pheaster* and hold that voice identifications are subject to the same due process standards governing visual identifications.

### B.

■ In determining the constitutional adequacy of identification procedures used in a given case, the crucial issue is "whether

---

1. Apparently, the first tape Pennell listened to was unrelated to the gambling investigation, and its playing was inadvertent.

2. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 87 S:Ct. 1967, 18 L.Ed.2d 1199 (1967); *Harris v. State,* Del.Supr., 350 A.2d 768 (1975); *Clark v. State,* Del.Supr., 344 A.2d 231 (1975).

3. The general authentication provision, Rule 901(a), reads: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Voices may be identified, under Rule 901(b)(5), "whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil,* 409 U.S. at 199, 93 S.Ct. at 382. *See, e.g., Harris v. State,* Del.Supr., 350 A.2d 768, 770 (1975); *Clark v. State,* Del.Supr., 344 A.2d 231, 236 (1975). The Supreme Court decision in *Neil* provides us with a number of factors to be considered, including:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. 409 U.S. at 199, 93 S.Ct. at 382.

As the Ninth Circuit observed in *Pheaster,* not all of the factors considered in the context of a visual identification are applicable to a voice identification, but "the general approach and the policy considerations are the same." 544 F.2d at 369–70. Thus, we must determine (1) whether the circumstances surrounding the identification "were unnecessarily suggestive" and (2) whether there was a likelihood of misidentification. *Clark,* 344 A.2d at 237. In deciding whether the identification procedures were unnecessarily suggestive, we look first to the necessity for the particular identification procedure used and then at the circumstances surrounding the identification. *Pheaster,* 544 F.2d at 370. *See Harris,* 350 A.2d at 770–71; *Clark,* 344 A.2d at 237.[4]

■ The speaker in the intercepted conversations in this case was involved in a large-scale gambling operation.[5] Vouras was not in custody. Though the police suspected his involvement, there was still insufficient evidence, in the view of the police, to submit the case to the grand jury. Furthermore, any prosecution would certainly depend on identifying "Cuckoo". In this situation there was clearly a need for a voice identification procedure. *Compare Pheaster,* 544 F.2d at 370.

■ Having concluded that the voice identification procedure was necessary, we next determine whether the circumstances of the identification were unnecessarily suggestive. *Harris,* 350 A.2d at 770; *Clark,* 344 A.2d at 237. *Cf. Pheaster,* 544 F.2d at 370. An important factor in evaluating a challenged identification is "the opportunity of the witness to view the criminal at the time of the crime". *Neil v. Biggers,* 409 U.S. at 199, 93 S.Ct. at 382. While Pennell in this case did not view Vouras "at the time of the crime," we think the underlying concept being expressed—the conditions and length of time in which the witness has earlier observed the defendant—is applicable to this case. *See Pheaster,* 544 F.2d at 370. In addition, *Neil* cites the witness' degree of attention and the witness' certainty of identification as other factors to consider. 409 U.S. at 199, 93 S.Ct. at 382. *See Brown v. Harris,* 666 F.2d at 786.

We do not deal here with a victim whose sole memory of the defendant is based on one observation made under emotionally upsetting circumstances. Instead, Pennell is an experienced police officer who had several opportunities to hear Vouras speak when they were in the same National Guard unit. Pennell had earlier identified Vouras' voice in a gambling investigation. In making the identification, Pennell relied not only on the nickname "Cuckoo" but also on the characteristics, mannerisms, and phrases he had heard Vouras use before. Pennell also testified to his concentration

---

4. We realize, of course, that the ultimate question is the reliability of the actual identification. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382. The necessity for the particular identification procedure, by itself, is not dispositive, but it instead indicates whether the police intentionally contributed to the suggestiveness of the procedure. This approach is consistent with that used in *Pheaster,* 544 F.2d at 370, and recognizes the concern expressed by Mr. Justice Rehnquist in *Sumner v. Mata,* 446 U.S. 1302, 100 S.Ct. 1630, 1632, 64 L.Ed.2d 216 (1980) (opinion in chambers).

5. The wiretaps which intercepted the defendant's conversations at issue here also led to the arrest of 22 persons in May 1980.

when listening to the tapes. Finally, when a tape unrelated to the investigation was inadvertently played, Pennell did not identify anyone on the tape.

In light of these facts, we can not say that the identification procedure used in this case was unnecessarily suggestive.[6] Assuming without deciding that we are required to consider the reliability of the identification. after finding the procedures involved not to be unnecessarily suggestive (*but cf. Harris,* 350 A.2d at 770–71; *Clark,* 344 A.2d 237), we conclude on the basis of the facts mentioned above that the identification made by Pennell was reliable, and the jury so found despite a vigorous effort by the defense to impeach Pennell's credibility. *See Pheaster,* 544 F.2d at 371. Because Pennell's out-of-court identification was admissible, the admissibility of his in-court identification need not be reached. *See also Baker v. State,* Del.Supr., 344 A.2d 240 (1975). Therefore, the trial judge did not err when he refused to suppress the identification of Vouras' voice on due process grounds.

### III.

■ Because of Pennell's inability to identify Vouras' voice on the tapes prepared by the defense, Vouras contends that the tapes of the intercepted conversations were inadequately authenticated under Delaware Uniform Rule of Evidence 901. To satisfy the authentication requirement, the proponent need only produce "evidence sufficient to support a finding that the matter in question is what [the] proponent claims." Del.R.Evid. 901(a). An opinion about the identity of a speaker is admissible on a showing that the identifying person has, at some time, heard the voice of the alleged speaker. *United States v. Smith,* 635 F.2d 716 (8th Cir.1980); *United States v. Rizzo,* 492 F.2d 443 (2d Cir.1974); Del.R.Evid. 901(b)(5). Once Pennell identified Vouras' voice, the standard of Rule 901(a) had been

met, and the ultimate question of the identity of the voice was one for the jury.[7] McCormick, Evidence 555 (2nd ed. 1972). *See also* Del.R.Evid. 104(b).

■ The accuracy of Pennell's identification was also a question for the jury. *United States v. Kirk,* 534 F.2d 1262 (8th Cir. 1976). The jury heard both the intercepted and the re-enacted conversations and also saw Pennell's inability to identify Vouras' voice in the re-enactments. Any doubts raised by the defense about Pennell's ability to identify Vouras' voice went to the weight of the evidence, not its admissibility. *Smith, supra; United States v. Albert,* 595 F.2d 283 (5th Cir.1979).

### IV.

The only substantial evidence linking Vouras to the gambling operation was the series of intercepted phone conversations. Vouras argues that in light of Pennell's inability to identify his voice in the re-enacted conversations, a reasonable juror could not conclude beyond a reasonable doubt that the speaker was Vouras. Therefore, according to Vouras, the motion for judgment of acquittal should have been granted.

■ When ruling upon a motion for acquittal, the trial judge must consider the evidence and all legitimately drawn inferences from the point of view most favorable to the state. *E.g., Conyers v. State,* Del. Supr., 396 A.2d 157 (1978). The motion is to be granted only when the state has presented insufficient evidence to sustain a verdict of guilt. *Id. See* Superior Court Crim.Rule 29(a). The jury, having heard all of the tapes offered by the state and the defense, could conclude that Vouras was in fact the person speaking. The trial judge, therefore, correctly denied Vouras' motion for judgment of acquittal.

\*   \*   \*

AFFIRMED.

---

6. Without a doubt, though, the better procedure would have been to ask Pennell, without naming Vouras, if he could identify the voices on the tapes.

7. None of the other authentication requirements are at issue. *See generally United States v. McMillan,* 508 F.2d 101 (8th Cir.1974).