**THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | **I.D. No. 1609000851** |
| | ) | |
| | ) | |
| FRANCIS E. BYRNE, | ) | |
| Defendant. | ) | |

Submitted: March 8, 2017
Decided: April 27, 2017
Corrected: May 8, 2017

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

This 27th day of April, 2017, having considered Defendant Francis E. Byrne's Motion for Judgment of Acquittal (D.I. 24); the State's Response thereto (D.I. 27); Defendant Byrne's Reply (D.I. 28); and the record in this matter; it appears to the Court that:

(1) On September 1, 2016, Delaware State Police arrested Defendant Francis E. Byrne ("Byrne") for multiple charges stemming from a traffic stop conducted that same evening.

(2) After a one-day trial, on February 23, 2017, a unanimous jury found Byrne guilty of Driving Under the Influence of Alcohol ("DUI"); Aggressive Driving; Speeding; Failure to Maintain Lane; Improper

Signaling; and Following a Motor Vehicle Too Closely.[1] Byrne has filed a timely Motion for Judgment of Acquittal under Superior Court Criminal Rule 29(c) alleging insufficiency of the evidence.[2]

(3)  Specifically, Byrne argues that the State failed to prove beyond a reasonable doubt that he was "impaired by alcohol."[3] Noting that he was only convicted under an impairment theory, Byrne contends that the evidence presented at trial was "not sufficient to support any rational jury's finding of alcohol causation beyond a reasonable doubt."[4]

(4)  The State counters that the evidence, both direct and circumstantial, when viewed in the light most favorable to its case, was sufficient to allow a reasonable jury to convict the defendant.[5]

(5)  A brief recounting of the evidence relevant to this motion follows. On the evening of September 1, 2016, Corporal Andrew Pietlock ("Cpl. Pietlock") of the Delaware State Police was in a fully marked police

---

[1]  Verdict Form, *State v. Byrne*, I.D. No. 1609000851 (Del. Super. Ct. Feb. 23, 2017).

[2]  *See* Def. Francis E. Byrne's Mot. for J. of Acquittal, at 3 (D.I. 24) (Del. Super. Ct. Mar. 2, 2017) [hereinafter "Byrne Mot."].

[3]  Byrne Mot. at 3.

[4]  *Id.*

[5]  State's Resp. to Def.'s Mot. for J. of Acquittal, at 4 (D.I. 27) (Del. Super. Ct. Mar. 8, 2017) [hereinafter "State's Resp."].

car patrolling northbound Route 202 in North Wilmington. He there saw Byrne's black Nissan pickup truck traveling at a high rate of speed, making several unsafe lane changes both with and without a turn signal, cutting off other drivers, and tailgating far too closely behind others. After observing these traffic infractions, Cpl. Pietlock was able to use moving radar to determine that Byrne was traveling at approximately 70 miles per hour in a posted 45 mile-per-hour zone. Cpl. Pietlock activated his emergency lights and Byrne pulled over into a parking lot, though not immediately.

(6) Cpl. Pietlock went to the driver's door of Byrne's pickup and asked for Byrne's identification and proof of insurance. As he was speaking to Byrne, the trooper smelled alcohol coming from the vehicle and took notice of Byrne's glassy, bloodshot eyes and slurred speech. Cpl. Pietlock asked Byrne if he had been drinking that evening. Byrne told him that he thought he had had just two beers approximately 30 minutes before being pulled over.

(7) At this point, Cpl. Pietlock had Byrne exit the pickup to perform sobriety tests. While alighting from the cab, Cpl. Pietlock noticed that Byrne had difficulty maintaining his balance and it appeared that he had urinated in his pants. Cpl. Pietlock instructed Byrne to complete several standard field sobriety tests designed to indicate impairment. After

-3-

administering four different sobriety tests, Cpl. Pietlock characterized Byrne's performance as failures for all tests. He concluded that Byrne was impaired. At this point, Cpl. Pietlock arrested Byrne and transported him to Troop 1 where Byrne took an Intoxilyzer test.

(8)  At trial, the State presented evidence of that Intoxilyzer test. Byrne produced an alcohol concentration of .177 grams per 210 liters of breath – more than twice the legal limit. Based upon this test result, the failed field sobriety tests, and his prior observations of Byrne, Cpl. Pietlock cited him for DUI and other charges.

(9)  After all evidence was presented at trial, Byrne made an oral Motion for Judgment of Acquittal, contending that the State presented insufficient evidence for the jury to properly consider the DUI charge. The Court heard arguments from the parties outside the presence of the jury and subsequently denied the Motion, finding that there was sufficient evidence for the jury to properly consider the DUI count. Byrne was convicted of DUI under 21 *Del. C.* § 4177(a)(1)[6] and numerous other traffic charges.

---

[6]  DEL CODE ANN. tit. 21, § 4177(a)(1) (2016) ("No person shall drive a vehicle . . . [w]hen the person is under the influence of alcohol.")

(10) A criminal defendant must meet a high bar to succeed on a Motion for Judgment of Acquittal under Superior Court Criminal Rule 29.[7] The Court may enter a judgment of acquittal on a specific count only if "the evidence is insufficient to sustain a conviction of such offense."[8] When evaluating the motion, the Court considers the evidence, "together with all

---

[7] *See generally Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (explaining that the inquiry on review of a motion for sufficiency of the evidence.

> does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law. (citations omitted) (emphasis in original).

*See also Williams v. State*, 539 A.2d 164, 166-69 (Del. 1988) (discussing development of Delaware's sufficiency-of-evidence standard and adoption of *Jackson* standard); *id.* at 167 ("Thus, prior to 1972, if the evidence was purely circumstantial and there was an alternate explanation of innocence that was consistent with the evidence, the conviction could not be sustained."); *Henry v. State*, 298 A.2d 327, 330 (Del. 1972) (Delaware Supreme Court "reconsider[ed and rejected] the rule as to circumstantial evidence long followed in this State. That rule has been to the effect that such evidence, in order to support a finding of guilt, must be inconsistent with any other reasonable finding.").

[8] Del. Super. Ct. Crim. R. 29(a). *See also Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982).

legitimate inferences therefrom . . . from the point of view most favorable to the State."[9]  "[T]he standard of review is 'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime.'"[10]  "For purposes of reviewing a claim of insufficient evidence there is no distinction between direct and circumstantial evidence."[11]

(11)  To prove Byrne's guilt as to Driving Under the Influence of Alcohol, the State had to demonstrate he was:  (a) driving a motor vehicle; (b) when he was under the influence of alcohol.[12]

(12)  One is under the influence for the purposes of § 4177(a)(1), when the "person is, because of alcohol . . . , less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgement, sufficient physical control, or due care in the driving of a

---

[9]     *State v. Biter*, 119 A.2d 894, 898 (Del. Super. Ct. Dec. 28, 1955).  *See also State v. Council*, 2016 WL 3880781, at *1 (Del. Super. Ct. July 12, 2016) (citing *Biter* and *Vouras*).

[10]    *Brown v. State*, 967 A.2d 1250, 1252 (Del. 2009) (emphasis in original) (alteration in original) (quoting *Priest v. State*, 879 A.2d 575, 577 (Del. 2005) (emphasis added) (citation omitted)).  *See also Williamson v. State*, 113 A.3d 155, 158 (Del. 2015).

[11]    *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994) (citing *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990)).  *See also Council*, 2016 WL 3880781, at *1 ("It is irrelevant if most of the State's evidence is circumstantial since the Court does not distinguish between direct and circumstantial evidence.").

[12]    DEL CODE ANN. tit. 21, § 4177(a)(1) (2016).  *See also Stevens v. State,* 110 A.3d 1264, 1270–71 (Del. Super. Ct. Jan. 20, 2015), *aff'd*, 129 A.3d 206 (Del. 2015).

vehicle."[13] The State is not required to establish the driver was "drunk" or "intoxicated."[14] "Nor is it required that impaired ability to drive be demonstrated by particular acts of unsafe driving."[15] Under Delaware law, "[a] chemical test is not necessary to prove [the] impairment" required by the statute.[16] The State may meet its burden by producing circumstantial evidence of alcohol's influence, and a jury may properly infer that influence from the defendant's conduct, demeanor, and statements.[17] And the State may present lay or other probative testimony to establish the defendant was under the influence of alcohol as defined by Delaware's statute.[18] Lastly, just as with the finding of any other necessary element, the jury may

---

[13] DEL CODE ANN. tit. 21, § 4177(c)(11) (2016).

[14] *See Stevens,* 110 A.3d at 1271. *See also Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993) (describing same "under the influence" element pre-codification); *State v. Baker*, 720 A.2d 1139, 1142 (Del. 1998); *Bennefield v. State*, 2006 WL 258306, at *3 (Del. Super. Ct. Jan. 4, 2006) (citing *Lewis*).

[15] *Lewis*, 626 A.2d at 1355.

[16] *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010) (citing DEL. CODE ANN. tit. 21, § 4177(g)(2) (2013) ("Nothing in this section shall preclude conviction of an offense defined in this Code based solely on admissible evidence other than the results of a chemical test of a person's blood, breath or urine . . . .")); *Shaw v. State*, 2007 WL 866196, at *1 (Del. Jan. 25, 2007) ("Chemical testing is not required to prove impairment.").

[17] *Church*, 2010 WL 5342963, at *1–2.

[18] *See State v. Durrant*, 188 A.2d 526, 529 (Del. 1963) ("[T]he sobriety of a person . . . can be determined by the direct answers of those who have seen him, and that they may express their opinion in relation thereto, as intoxication may fairly be considered in the realm of common knowledge").

properly infer that alcohol was the influencer of the driver's ability and conduct from all evidence presented – direct and circumstantial.

(13) When viewing the totality of the evidence and the reasonable inferences drawn therefrom in the light most favorable to the State, it is clear that a reasonable trier of fact could find Byrne was influenced by alcohol when he drove. The jury was presented evidence: (a) of Byrne's erratic driving, including numerous moving violations; (b) of the odor of alcohol on Byrne's breath; (c) of Byrne's glassy and bloodshot eyes; (d) of Byrne's slurred speech; (e) of Byrne's admission to drinking alcohol, specifically beer, approximately thirty minutes prior to being pulled over; (f) that Byrne urinated in his pants prior to exiting the vehicle and a second time during field testing; (g) that Byrne stumbled upon exiting the vehicle; (h) that Byrne was unable to follow instructions during field testing; (i) of Byrne's complete and utter failure on the field tests; (j) that a chemical test, at the very least, showed Byrne had alcohol in his system; and, (k) of Cpl. Pietlock's observations as one experienced in DUI detection and enforcement. Much of this evidence the jury saw firsthand from the roadside video of Byrne's actions and demeanor.

(14) The jury derived these facts and circumstances from the trial evidence, drew reasonable inferences therefrom, and found Byrne was guilty

beyond a reasonable doubt of driving under the influence. No doubt, it was proper to do so.

(15) Byrne admitted at trial and admits now that he was impaired at the time he was stopped by Cpl. Pietlock.[19] But Byrne goes on to make the peculiar argument that, because he was only convicted on an impairment theory, the evidence presented was not sufficient to support the jury's finding beyond a reasonable doubt that he was under the influence of *alcohol* as opposed to any other possible influencing factor. Specifically, Byrne suggests: (a) that the Horizontal Gaze Nystagmus ("HGN"), a field sobriety test used to assess whether a driver is impaired by alcohol, was not administered; (b) that the field sobriety tests that were administered to determine impairment were not specific to show that alcohol caused his impairment; and, (c) that the only evidence suggesting his admitted impairment was caused by alcohol was a moderate odor of alcohol and an admission of prior consumption of two beers.[20] Byrne contends that the

_____

[19] Byrne Mot. at 2. ("On this Record, it was uncontested that Defendant was impaired at the time he was stopped by Corporal Pietlock.").

[20] Byrne Mot. at 2–3. While he doesn't expressly say so, Byrne seems to be under the misimpression that the jury must credit his claim of "just two beers" as true. Not so. The jury was solely responsible for judging the credibility of Byrne's statements presented and resolving any conflict in the testimony and evidence at trial. *See Tyre v. State*, 412 A.2d 326, 330 (Del. 1980) ("[I]t was the duty of the jury to determine if the State had proved each necessary element of the charges beyond a reasonable doubt and, in making such determination, it does not have to accept the total testimony of one

-9-

State must affirmatively prove alcohol as the cause of his impairment as opposed to any other possible cause and that it did not do so on the facts presented. While he protests otherwise, Byrne does, in effect, posit that the State must disprove any other theoretical cause of impairment, even when there is no evidence of any other cause.[21] The State need not. And Byrne's suggested articulation of the sufficiency-of-evidence test is one rejected almost four decades ago.[22]

---

witness. . . . It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."). *See also Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992); *Vouras,* 452 A.2d, at 1169.

[21]     Byrne Mot. at 3–4.

[22]     *See supra* note 7. Byrne's principal authority in support of this argument is an extreme outlier in Delaware's sufficiency-of-evidence jurisprudence where a burglar gained entrance to a commercial establishment by smashing a glass door and the State relied on latent fingerprint evidence on a location accessible to the public to obstain his conviction. *Monroe v. State*, 652 A.2d 560, 562 (Del. 1995). The deciding three-justice panel of the Delaware Supreme Court observed certain weakness in the State's case and concluded that

> Though the State no longer needs to disprove every possible innocent explanation in pure circumstantial evidence cases, the range of abundant, innocent explanations for the presence of Monroe's prints on the plexiglass shards is too vast for 'any rational trier of fact' to have found beyond a reasonable doubt an essential element of both charged offenses – namely, identity.

*Id.* at 567 (internal citation omitted). The *Monroe* Court applied its very fact-specific sufficiency-of-evidence standard to the unique circumstances in that case and limited its holdings to the facts presented before it. *Id.* Research bears out that the result in *Monroe* is singular in Delaware law.

(16) While in his closing Byrne suggested to the jury that there are multiple other theoretical possible causes of his impairment, Byrne presented no evidence suggesting impairment by anything other than alcohol. The State, on the other hand, presented substantial evidence from which a rational trier of fact could infer both consumption of and impairment by alcohol. Notably, this evidence included video footage of Byrne's erratic driving, video footage of Byrne stumbling and failing to complete four separate field sobriety tests, Cpl. Pietlock's testimony describing Byrne's slurred speech, glassy eyes and odor of alcohol, and Byrne's own admission that he had been drinking. Again, one can always be convicted of DUI by circumstantial evidence.[23] And circumstantial evidence may be that upon which the jury relies to identify the cause of impairment in such a case.

(17) Byrne's bald assertion that the State cannot use the Intoxilyzer reading to support this DUI conviction "because the jury logically did not unanimously find the reading was reliable beyond a reasonable doubt" certainly is not dispositive.[24] Even without the Intoxilyzer reading, there is

---

[23] *State v. Pritchett*, 173 A.2d 886, 889 (Del. Super. Ct. Sept. 13, 1961) ("It has long been established in this State that any conviction of any criminal charge may be sustained on circumstantial evidence.").

[24] Byrne Mot. at 5.

-11-

sufficient evidence from which any rational trier of fact could have found Byrne to have consumed and been impaired by alcohol while driving his pickup.[25] His jury's guilty verdict for Byrne's violation of 21 *Del. C.* § 4177(a)(1) is well-supported by the evidence presented.

(18) The Court finds that the jury, having heard and seen all of the evidence offered by the State and the Defense, could, and did, reasonably conclude that there was sufficient evidence to support Byrne's DUI conviction.

**IT IS HEREBY ORDERED,** that Defendant's Motion for Judgment of Acquittal is **DENIED**.

*/s/ Paul R. Wallace*
**Paul R. Wallace, Judge**

Original to Criminal Prothonotary

cc:   Dominic A. Carrera, Jr., Esquire, Deputy Attorney General
      Edmund Daniel Lyons, Esquire

---

[25]   *See, e.g., Stevens,* 129 A.3d at 210–12; *Church,* 2010 WL 5342963, at \*2; *Shaw,* 2007 WL 866196, at \*1–2.