**David BROWN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 157, 2008.

Supreme Court of Delaware.

Submitted: Dec. 17, 2008.
Decided: Feb. 18, 2009.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, David Brown ("Brown"), was charged with Possession with Intent to Deliver Marijuana and Maintaining a Vehicle for Keeping Marijuana. The first trial resulted in the declaration of a mistrial. After a second jury trial in September 2007, Brown was found guilty of both offenses.

Brown was declared a habitual offender. He was sentenced on the Possession with Intent to Deliver Marijuana offense to two years imprisonment at Level 5. For the Maintaining a Vehicle offense, he was sentenced to three years imprisonment at Level 5, suspended for one year probation supervision at Level 3.

In this appeal, Brown challenges his conviction of Maintaining a Vehicle for Keeping Marijuana. He does not appeal from his conviction for Possession with Intent to Deliver Marijuana. Brown contends that the trial judge erred in denying his motion for acquittal on the charge of Maintaining a Vehicle because there was insufficient evidence to find him guilty beyond a reasonable doubt of all of the elements of that offense. Brown also argues that the trial judge erroneously instructed the jury on the elements of that offense.

We have concluded that the Superior Court erred, as a matter of law, in denying Brown's motion for a judgment of acquittal. The record reflects that the Superior Court also erred in its instructions to the jury. We address the jury instruction argument in the interest of justice and judicial economy for the benefit of future cases, because it would have constituted an independent basis for a reversal of Brown's conviction, albeit not an acquittal.

### Facts

On April 14, 2007, a team of police officers and probation officers were patrolling the Wilton neighborhood near routes 13 and 40 in New Castle County as part of Operation Safe Streets.[1] Around 7:30 p.m., the officers pulled over a gold 1994 Lexus 300 because a headlight was out. Two officers approached the vehicle and asked the three occupants for their identities to determine whether anyone was wanted by the police or on probation.

The driver was Curtis Boswell ("Boswell"). The front-seat passenger said his name was "John Smith." Brown was the back-seat passenger. Because the officers

---

1. Operation Safe Streets is a statewide joint police and probation program designed to apprehend offenders who are not complying with their probation terms. *See Carrigan v. State,* 945 A.2d 1073, 1077 n. 13 (Del.2008).

initially could not confirm the front-seat passenger's identity, they removed the men from the vehicle, separated them and patted them down for weapons. The officers found $1,017 in cash on Boswell, who was arrested for traffic and criminal offenses that were not drug-related. They later determined the front-seat passenger was Douglas Dowling ("Dowling"), who was wanted in Pennsylvania for escape from work release. The officers did not find any drugs or drug paraphernalia in the vehicle.

The officer who patted down Brown felt a "crinkly" object, "like a bag," in Brown's front, right jacket pocket. The officer asked Brown what it was and Brown said it was candy. The officer asked what kind of candy and Brown said, "I'm not going to lie to you. It's weed." The officer handcuffed Brown and removed the object from Brown's pocket. It was a plastic bag with twenty-two smaller plastic bags inside that each contained a small amount of marijuana. Brown was arrested and charged with Possession with Intent to Deliver Marijuana and Maintaining a Vehicle for Keeping Marijuana. The driver was not charged with any drug-related offenses.

At Brown's trial in September 2007, a police officer with experience investigating controlled substances testified that, in his opinion, the marijuana was packaged for distribution and not for personal use. The total weight of the marijuana was 34.94 grams.

### Standard of Review

■ Brown moved for judgment of acquittal on the Maintaining a Vehicle offense on the ground that, while the evidence showed that he possessed mari-

juana, it was insufficient to prove that he kept or maintained the vehicle itself because there was no evidence that he had any control over the operation of the vehicle. The Superior Court denied the motion for judgment of acquittal. The scope of review from the denial of the motion for judgment of acquittal is *de novo* and the standard of review is "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime."[2]

### Maintaining a Vehicle

■ The offense of Maintaining a Vehicle for Keeping a Controlled Substance is defined by title 16, section 4755(a)(5) of the Delaware Criminal Code, which provides in pertinent part:

> It is unlawful for any person ... [k]nowingly to keep or maintain any ... vehicle ... which is resorted to by persons using controlled substances ... for the purpose of using [controlled] substances or which is used for keeping or delivering them.... [3]

At Brown's trial, the State's evidence showed that a police officer and two probation officers stopped a vehicle with a headlight out. The officers questioned and removed the driver and the front-seat passenger from the vehicle. The officers also questioned Brown, who was a passenger in the back-seat, and removed him from the vehicle. They searched all three individuals. In Brown's jacket pocket, the arresting officer found a plastic bag containing twenty-two smaller bags of marijuana. The driver possessed $1,017 in

---

**2.** *Priest v. State,* 879 A.2d 575, 577 (Del.2005) (emphasis added) (citation omitted); *McNulty v. State,* 655 A.2d 1214, 1216 n. 8 (Del.1995) (citation omitted).

**3.** Del.Code Ann. tit. 16, § 4755(a)(5) (2008).

cash. The officers did not find any drugs or drug paraphernalia in the vehicle.

In this appeal, Brown argues that the Superior Court erred when it denied his motion for judgment of acquittal on the offense of Maintaining a Vehicle because there was insufficient evidence to prove all of the elements of that offense. Brown argued to the trial court that a conviction for Maintaining a Vehicle requires more proof than evidence that a passenger in a vehicle possessed drugs while in the vehicle. Otherwise, Brown argued, any person who possessed a controlled substance while in a vehicle would be guilty of Maintaining a Vehicle for Keeping a Controlled Substance.

In *Priest v. State*, this Court reversed a conviction for Maintaining a Vehicle for Keeping a Controlled Substance, due to insufficient evidence for that offense.[4] The record in *Priest* reflected that the driver of the vehicle and the front-seat passenger, not Priest, had agreed to use the driver's vehicle to drive to a location where they could buy drugs.[5] Priest, also a passenger, was sitting in the back seat.[6] The driver of the vehicle testified that, as the arresting officer approached the vehicle, Priest appeared to be hiding something in the back seat.[7] The officer searched the car and recovered crack cocaine and a scale in the front seat area and glove box.[8] He also located a loaded firearm hidden in the back seat cushion.[9]

In *Priest*, we held that something more than presence in a vehicle that contains controlled substances or knowledge that controlled substances are in the vehicle is required to prove that a defendant maintained a vehicle to keep controlled substances.[10] Accordingly, our holding in *Priest* requires the State to prove "some affirmative activity ... to utilize the vehicle to facilitate the possession, delivery, or use" of the controlled substance.[11] *Priest's* conviction for Maintaining a Vehicle for Keeping a Controlled Substance was reversed on appeal because the State did not "offer evidence of some affirmative activity by the defendant to utilize the vehicle to facilitate the possession ... or use of controlled substances."[12]

In this case, the Superior Court ruled that *Priest* was distinguishable because there was no evidence that Priest, a passenger in the back seat, was aware that drugs were in that vehicle, while in this case, Brown possessed the drugs himself while he was in the vehicle. Brown argues that the Superior Court erred, however, because it focused only on one element, that Brown was responsible for possessing or using a controlled substance, but not on the separate, additional element that Brown maintained or kept the vehicle in order to facilitate the possession or use of the controlled substance. We agree.

In *Priest*, this Court recognized that "the critical benchmark for determining the sufficiency of the evidence in a Maintaining a Vehicle prosecution has been the degree of the defendant's control or use of the vehicle in connection with the posses-

---

4. *Priest v. State*, 879 A.2d 575 (Del.2005).

5. *Id.* at 576.

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.* at 580.

11. *Id.* at 576.

12. *Id.*

sion of drugs." [13] In *Priest*, this Court held "that in order to sustain a finding of guilt on a Maintaining a Vehicle charge, the State must offer evidence of some affirmative activity by the defendant to utilize the vehicle to facilitate the possession, delivery, or use of controlled substances." [14]

The statutory element that a defendant "keep or maintain" a vehicle requires more than merely proving that a defendant possessed or used a controlled substance while in a vehicle. If, in order to establish the offense of Maintaining a Vehicle for Keeping a Controlled Substance, the State need only show that Brown possessed a controlled substance while in a vehicle, the necessary statutory element that Brown also keep or maintain the vehicle itself is eliminated. If it is only necessary to prove that a passenger in a vehicle possessed or used a controlled substance in the vehicle in order to prove the offense of "maintaining" or "keeping" the vehicle for that purpose, then the element and language of the offense that the defendant "keep or maintain" the vehicle, and not just the controlled substance, would be statutory surplusage.

This Court reiterated in *Priest* that section 4755(a)(5) "requires only that the State prove a single instance of possession or use of a controlled substance in connec-

tion with a vehicle." [15] This Court noted that most, if not all, other jurisdictions that adopted the Uniform Controlled Substances Act "reject the 'single occurrence' approach that Delaware endorses." [16] By "single occurrence," however, this Court did not mean that the State simply must prove that the defendant possessed drugs while in a vehicle. [17] The defendant must exercise some control over the vehicle in order to "keep or maintain" the vehicle. [18]

In *Priest*, this Court further explained that whether there is sufficient evidence to support a conviction for Maintaining a Vehicle for Keeping a Controlled Substance turns on "the degree of the defendant's control or use of the vehicle in connection with the possession of drugs." [19] Priest's mere presence in the vehicle while another occupant possessed drugs and attempted to facilitate a drug transaction "d[id] not establish that Priest *knowingly* kept or maintained a vehicle 'used for keeping or delivering' controlled substances." [20] Therefore, there was insufficient evidence to support Priest's conviction for Maintaining a Vehicle for Keeping a Controlled Substance. [21]

In this case, the record reflects there was no evidence of "affirmative activity" by Brown to "utilize" the vehicle to "facilitate" the possession or use of the controlled substance as our holding in *Priest* requires. The only evidence was that

---

13. *Priest v. State*, 879 A.2d at 579–80.

14. *Id.* at 576.

15. *Id.* at 579.

16. *Id.* at 579 n. 22 (citing cases). Delaware adopted the Uniform Controlled Substances Act in 1972.

17. *Cf.* Del.Code Ann. tit. 16, § 4767 (2008) (prohibiting the distribution or possession of controlled substances within 1,000 feet of a school); Del.Code Ann. tit. 16, § 4768 (2008) (prohibiting the distribution or possession of controlled substances within 300 feet of a

park or church). Under those statutes, the State only has to prove that the defendant (1) distributed or possessed drugs and (2) was within 1,000 feet of a school or 300 feet of a park or church.

18. Del.Code Ann. tit. 16, § 4755(a)(5).

19. *Priest v. State*, 879 A.2d at 579–80.

20. *Id.* at 580.

21. *Id.*

Brown was a passenger in a vehicle and that he possessed marijuana. There was no evidence that he was acting in concert with the driver to facilitate a drug transaction. The driver of the vehicle was not charged with any drug-related offenses. In addition, the State presented no evidence that Brown exercised any control over the operation of the vehicle or directed its travel. Thus, while there was sufficient evidence of one element of the offense, i.e., that Brown possessed marijuana in a vehicle, there was no evidence of the separate element that he kept or maintained the vehicle itself.

There was no evidence at trial that Brown exercised any control over the operation or direction of the motor vehicle, only that he was a passenger. In the absence of any evidence that Brown engaged in "some affirmative activity" to use the vehicle to "facilitate" his possession of a controlled substance, there was insufficient evidence that he maintained a vehicle for keeping a controlled substance. Therefore, we hold that the Superior Court erred, as a matter of law, in denying Brown's motion for a judgment of acquittal on that charge.[22]

### *Jury Instruction*

 Brown's second argument is that the Superior Court erroneously instructed the jury when defining the Maintaining a Motor Vehicle offense. The trial court has wide latitude in framing jury instructions and its choice of wording will not be disturbed as long as the instruction correctly stated the law and was not so confusing or inaccurate as to undermine the jury's abili-

ty to reach a verdict.[23] Therefore, this Court reviews a challenged jury instruction to determine whether the instruction correctly stated the law and enabled the jury to perform its duty.[24]

During the prayer conference, the trial judge characterized the statute defining the offense of Maintaining a Vehicle for Keeping a Controlled Substance as "inartfully written" and "confusing." The language the State used in Brown's indictment undoubtedly contributed to the trial judge's concerns. Brown was indicted for "Use of a Vehicle for Keeping Controlled Substances in violation of Title 16, Section 4755(a)(5) of the Delaware Code." As we discussed earlier in this opinion, section 4755(a)(5) prohibits *keeping* or *maintaining* a vehicle "for the purpose of using [controlled substances] or which is used for keeping or delivering [controlled substances] in violation of this chapter."[25] Therefore, the State's reference in Brown's indictment to the offense as "using a vehicle" is confusing.

In Brown's case, the trial judge instructed the jury that:

> [A] person is guilty of Maintaining a Vehicle when he knowingly keeps, uses, or maintains any vehicle which is resorted to by persons using, keeping or delivering controlled substances ... or which is used for keeping or delivering controlled substances.

According to Brown, when the trial judge defined the offense to permit a finding of guilt if the defendant "keeps, *uses*, or maintains" any vehicle, it deviated from the statutory definition, which requires

---

22. *Priest v. State*, 879 A.2d 575 (Del.2005).

23. *Allen v. State*, 953 A.2d 699, 701 (Del.2008) (citing *Cabrera v. State*, 747 A.2d 543, 544–45 (Del.2000) (per curiam) (holding that the challenged jury instructions were informative and not misleading)).

24. *Id.* (citing *Corbitt v. Tatagari*, 804 A.2d 1057, 1062 (Del.2002)).

25. Del.Code Ann. tit. 16, § 4755(a)(5) (2008).

that the defendant must "keep or maintain" a vehicle, by also permitting a conviction for his "use" of a vehicle.[26] In this appeal, the State acknowledges that the trial judge's instruction to Brown's jury was not the standard instruction and did not follow the language of the statute.

Brown's attorney objected to the word "use" in the definition of the offense (i.e., "knowingly keeps, *uses* or maintains") and in the first element of the offense (i.e., "kept, *used* or maintained") because the relevant part of the statute only contains the words "keep" and "maintain." Brown's counsel argued that "use" lowers the level of proof required to support a conviction. The trial judge disagreed. She stated that the statute "does say keep or maintain at the first part, but at the end [says], 'or which is used for keeping or delivering.' So, the statute refers to use of a vehicle."

The State's evidence at trial only established that Brown was a passenger in the vehicle while he was in the possession of marijuana. The "use" of a vehicle would, to a reasonable juror's understanding, be satisfied by proof of Brown's being a passenger in a vehicle because a mere passenger "uses" a vehicle.[27] By defining the offense as including the use of a vehicle, and not restricting its definition to keeping or maintaining a vehicle, the jury instructions permitted Brown's conviction solely if the offense of Possession of a Controlled Substance occurred in a motor vehicle. That instruction was factually misleading and legally erroneous.

The statute unambiguously provides that a person must keep or maintain a vehicle for the use of controlled substances or for the purpose of keeping or delivering controlled substances.[28] Keeping or maintaining a vehicle is a higher standard than using a vehicle. Therefore, we hold that the instructions in Brown's case did not correctly state the law and did not enable the jury to perform its duty.[29]

### Conclusion

Accordingly, the Superior Court's judgment of conviction for Maintaining a Vehicle is reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**26.** Del.Code Ann. tit. 16, § 4755(a)(5).

**27.** During oral argument before this Court, the State acknowledged that if Brown had been traveling as a mere passenger in a commercial bus, he would not be "maintaining" or "keeping" that vehicle.

**28.** Del.Code Ann. tit. 16, § 4755(a)(5).

**29.** *Probst v. State*, 547 A.2d 114 (Del.1988).