# THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | **I.D. Nos. 1502014659 and** |
| | ) | **1502014656** |
| | ) | |
| **v.** | ) | |
| | ) | **Cr. A. Nos.  IN15-03-1828, etc.** |
| | ) | |
| **DARIUS BARRETT,** | ) | |
| **AKEEM COSTON,** | ) | |
| **Defendants.** | ) | |

Submitted: July 14, 2016
Decided: July 25, 2016

## ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL

This 25th day of July, 2015, having considered Defendant Darius Barrett's Motion for Judgment of Acquittal (D.I. 30); Defendant Akeem Coston's Motion for Judgment of Acquittal (D.I. 22); the State's response thereto (D.I. 24 and 32); Defendant Coston's Reply (D.I. 26); Defendant Barrett's Reply (D.I. 33); and the record in this matter, it appears to the Court that:

(1)    On February 24, 2015, Wilmington police arrested Defendants Akeem Coston ("Coston") and Darius Barrett ("Barrett") (collectively "Defendants") for multiple charges stemming from a traffic stop.

(2)     After a two-day trial, on February 4, 2016, the jury found Coston guilty of Possession of Heroin, Carrying a Concealed Deadly Weapon, and Possession of a Firearm While in Possession of a Controlled Substance;[1] and, Barrett guilty of Drug Dealing, Possession of a Firearm During the Commission of a Felony, and Carrying a Concealed Deadly Weapon.[2] Defendants each filed a timely Motion for Judgment of Acquittal under Superior Court Criminal Rule 29 and each generally alleging insufficiency of the evidence.[3]

(3)     Specifically, Coston moves for acquittal as to the charges related to gun possession. For the charge of Carrying a Concealed Deadly

---

[1]     See DEL. CODE ANN. tit. 16, § 4763 (2015) (possession of a controlled substance); *id.* at tit. 11, § 1442 (carrying a concealed deadly weapon); *id.* at § 1448(a)(9) (illegal possession of a firearm includes "[a]ny person, if the deadly weapon is a semi-automatic or automatic firearm, or a handgun, who, at the same time, possesses a controlled substance" as defined by statute).

[2]     See *id.* at tit. 16, § 4753(2) (drug dealing); *id.* at tit. 11, § 1447A (possession of a firearm during the commission of a felony).

[3]     See Def. Akeem Coston's Opening Mem. Of Law in Support of Mot. for J. of Acquittal ("Coston Mot."); Def. Darius Barrett's Mot. for J. of Acquittal ("Barrett Mot.").

At the close of the State's case on February 3, 2016, Barrett made an oral motion for judgment of acquittal on the gun charges. The Court denied his motion. *See* Feb. 3, 2016 Trial Tr. at 161.

Coston argued for acquittal as to charges made against him related to drug dealing. The State entered a *nolle prosequi* on these charges. But Coston did not make any arguments for judgment of acquittal for the carrying a concealed deadly weapon or the possession of a firearm while in possession of a controlled substance charges, stating that "I understand what the standard is and I think that there is, arguably – the State could make the argument and I think that would be denied." Feb. 3, 2016 Trial Tr. at 150.

-2-

Weapon, Coston argues that the State failed to introduce sufficient evidence to prove that he "carried" the firearm "about his person."[4] As to the charge for Possession of a Firearm While in Possession of a Controlled Substance, he argues that the State failed to prove that Coston "knowingly exercised dominion or control over a firearm" to establish possession.[5] Essentially, he argues that the State failed to present sufficient evidence that Coston knew of the gun's presence.

(4)     Barrett also moves for a judgment of acquittal on the charges related to firearm possession.[6] Similar to Coston, he asserts that "there simply was no evidence tying Mr. Barrett to the gun or establishing an intent to exercise dominion or control . . . for constructive possession."[7]

(5)     The State argues that the evidence, both direct and circumstantial, when viewed in the light most favorable to its case, was sufficient to allow a reasonable jury to convict the defendants.[8]

(6)     A brief recounting of the evidence relevant to these motions follows. On February 24, 2015, Detective Antonio Tiberi and his partner

---

[4]     Coston Mot. at 7-8 (labeled [4]-[5]).

[5]     *Id.* at 4-7 (labeled [1]-[4]).

[6]     Barrett Mot. at 21.

[7]     *Id.* at 5.

[8]     State's Resp. to Defs.' Mot. for J. of Acquittal ("State's Resp.").

Officer Kate Sweeney, while driving an unmarked police car, observed a black Hyundai Entourage (a minivan) fail to completely stop at a traffic signal.[9] The officers activated their emergency lights, but the minivan continued to drive – though there was ample opportunity to pullover – for two city blocks before stopping.[10] Detective Tiberi approached the vehicle and requested identification from both the minivan's driver, Coston, and passenger, Barrett.[11] He learned that Coston's license was suspended because of a missed traffic court hearing.[12] He also smelled marijuana coming from inside the van.[13] At this point, Detective Tiberi removed both occupants, placing Coston in handcuffs and frisking Barrett for weapons.[14] Barrett's frisk revealed $180 cash, a cell phone, and fourteen bags of

---

[9] Feb. 2, 2016 Trial Tr. at 132-35. *See also* DEL. CODE ANN. tit. 21, § 4108 (3).

[10] Feb. 2, 2016 Trial Tr. at 135-36.

[11] *Id.* at 139.

[12] *Id.* at 157.

[13] *Id.* at 140.

[14] *Id.*

marijuana of varying weights that totaled approximately 38 grams.[15] At this point, Barrett and Coston were arrested.[16]

(7) Incident to arrest, Detective Tiberi searched the minivan.[17] The passenger compartment was pristine with only one foreign object within it:[18] a lone closed backpack, located in the middle of the floor just behind the driver and passenger seat.[19] The backpack was well within arm's length of both Coston and Barrett.[20] And it contained a .22 caliber Mossberg firearm with thirteen rounds of ammunition in a magazine, 46 rounds of loose ammunition, and two boxes of .22 caliber ammunition.[21] The van was otherwise empty, save for a stroller behind the third row in the luggage area.[22] At this point, Officer Sweeney drove the minivan with the backpack

---

[15]     *Id.* at 140-41.

[16]     *Id.* at 142.

[17]     *Id.*

[18]     *See* Feb. 3, 2016 at 160; *see also* State's Trial Ex. 3 (picture of van's passenger compartment).

[19]     Feb. 2, 2016 Trial Tr. at 142, 169.

[20]     *Id.* at 145.

[21]     *Id.* at 142. Detective Tiberi misspoke at one point when he said the firearm was a "rifle." *See id.* In fact, it was a ".22-caliber semiautomatic pistol." *See* Feb. 3, 2016 Trial. Tr. at 100-01; *see also* State's Trial Ex. 9 (the firearm).

[22]     Feb. 2, 2016 Trial Tr. at 161-62.

and gun to the Evidence Detection Unit.[23]   The van was not registered to either Defendant.[24]

(8)   At the Wilmington Police Station, Detective Matthew Rosario searched Coston and discovered eighteen bags of heroin, one Endocet pill (an opioid), and one bag of marijuana on his person.[25]

(9)   The State presented witnesses and experts who testified regarding the (lack of) physical evidence as to the Defendants' ownership or possession of the firearm.   Detective Tiberi testified that the gun was not reported as stolen on either state or federal databases.[26]   Corporal Richard Evans testified that no fingerprint evidence was recovered from the gun,[27] but that this was expected given the difficulty in obtaining prints off of the firearm's particular material.[28]   DNA analyst Paul Gilbert of the Delaware Division of Forensic Sciences testified that none of the DNA samples

---

[23]     *Id.* at 145.

[24]     *Id.* at 180 (Detective Tiberi testified that the minivan was registered to a Shakira Romeo.  That person never contacted the police regarding her vehicle).

[25]     *Id.* at 164-67.

[26]     *Id.* at 182-83.

[27]     *Id.* at 201-02.

[28]     *Id.* at 195 ("This gun is like a plasticky material that's a bit rough, and is not a very good surface, I would say, to actually acquire any latent lifts.  The best things are, like a gloss, metal, like really smooth plastics.  Stuff like this, like parkerization or plasticky, it is very hard to actually obtain a latent lift off that.").

recovered from the firearm matched the Defendants' DNA.[29] But he also testified that a negative result in this type of case was very common and was not dispositive as to whether Defendants actually handled the gun.[30]

(10) Defendants face a high bar on a motion for judgment of acquittal under Superior Court Criminal Procedural Rule 29.[31] The Court may only order entry of judgment of acquittal if "the evidence is insufficient

---

[29] Feb. 3, 2016 Trial Tr. at 100-07.

[30] *Id.* at 96-97 ("With swabs taken from firearms, they can be difficult, in a sense, to work with. Often you get very little DNA to work with, which leads to poor DNA profiles, or you get the other end, the other extreme, where you have DNA from multiple individuals, which gives mixed DNA profiles, which are very difficult to compare with reference DNA samples.").

[31] *See generally Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (explaining that the inquiry on review of a motion for sufficiency of the evidence

> does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.") (citations omitted) (emphasis in original).

*See also Young v. State*, 407 A.2d 517, 524 (Del. 1979) (adopting *Jackson* standard).

to sustain a conviction of such offense or offenses."[32] When evaluating the motion, the Court considers the evidence, "together with all legitimate inferences therefrom from the point of view most favorable to the State."[33] "[T]he standard of review is 'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.'"[34] "For purposes of reviewing a claim of insufficient evidence there is no distinction between direct and circumstantial evidence."[35]

(11) As to all charges, the issue in contention is *knowing* possession.

(12) To prove Barrett's charge of Possession of a Firearm During the Commission of Felony, the State was required to demonstrate that Barrett "(1) committed an underlying felony (2) while possessing a firearm, and (3) acted knowingly."[36] As correctly stated to the jury, the relevant

---

[32] Superior Ct. Crim. R. 29(a); *Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982).

[33] *State v. Biter*, 119 A.2d 894, 898 (Del. Super. Ct. 1955); *State v. Council*, 2016 WL 3880781, at *1 (Del. Super. Ct. July 12, 2016).

[34] *Brown v. State*, 967 A.2d 1250, 1252 (Del. 2009) (emphasis in original) (quoting *Priest v. State*, 879 A.2d 575, 577 (Del. 2005)). *See also Williamson v. State*, 113 A.3d 155, 158 (Del. 2015).

[35] *Desmond*, 654 A.2d at 829 (citing *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990)). *See also Council*, 2016 WL 3880781, at *1 ("It is irrelevant if most of the State's evidence is circumstantial since the Court does not distinguish between direct and circumstantial evidence.").

[36] *Peterson v. State*, 81 A.3d 1244, 1248 (Del. 2013).

-8-

question was whether the Defendants *knowingly possessed* the firearm under certain circumstances.[37] The weapon was not required to be physically on Barrett's person at the time of his arrest; rather "possession" occurs when the weapon "is physically available or accessible to him during the commission of the crime."[38] Accordingly, a jury may infer from a weapon's proximity to a quantity of drugs sufficient to constitute a felony "that the gun was accessible to the defendant at some point during the transaction for purposes of [section] 1447A."[39] And too, a "defendant's intention . . . knowledge or belief at the time of the offense for which the defendant is charged may be inferred by the jury from the circumstances surrounding the

---

[37] *See* Feb. 3, 2016 Trial Tr. at 235-37 (jury instruction on charge for Possession of a Firearm During Commission of a Felony), *id.* at 237-38 (jury instruction on charge for Carrying a Concealed Weapon); *id* at 240-43 (jury instruction on charge for Possession of a Firearm While in Possession of a Controlled Substance). *See also* 11 Del. C. § 231(c) ("A person acts knowingly with respect to an element of an offense when: (1) If the element involves the nature of the person's conduct or the attendant circumstances, the person is aware that the conduct is of that nature or that such circumstances exist . . . ").

[38] *Maddrey v. State*, 975 A.2d 772, 776 (Del. 2009). *See also Lecates v. State*, 987 A.2d 413, 419 (Del. 2009) (agreeing that this is the test for possession of a deadly weapon while committing a felony).

[39] *Maddrey*, 975 A.2d at 776 (alteration in original) (quoting *Childress v. State*, 721 A.2d 929, 931 (Del. 1998)).

act the defendant is alleged to have done."[40]  Barrett and Coston's jury knew this.[41]

(13)  As to Coston's charge for Carrying a Concealed Deadly Weapon,[42] the State was required to prove that Coston carried the firearm "about the person" which is "determined by considering whether the weapon was immediately available and accessible to the person."[43]

(14)  His conviction for Possession of a Firearm by a Person Prohibited required proof that the he was a prohibited person and that he knowingly possessed or controlled a deadly weapon.[44]  There is no dispute that the heroin, pills, and marijuana tucked in his pocket and rectum[45] qualifies Coston as a "person prohibited."  As to the firearm, Coston's possession could be "actual or constructive: actual possession requires 'direct physical control' that "amounts to a conscious dominion, control and authority.'  Constructive possession requires the State to show that the defendant 'knew the location' of the objects, 'had the ability to exercise

---

[40]  DEL. CODE ANN. tit. 16, § 307 (2015).

[41]  Feb. 3, 2016 Trial Tr. at 244-45 (jury instruction on state-of-mind).

[42]  DEL. CODE ANN. tit. 11, § 1442.

[43]  *Smith v. State*, 2015 WL 1422427, at *2 (Del. Mar. 26, 2015).

[44]  DEL. CODE ANN. tit. 11, § 1448(b).

[45]  *See* Feb. 3, 2016 Trial Tr. at 29-30.

-10-

dominion and control,' and 'intended to exercise dominion and control' over them."[46] To prove constructive possession of a firearm, the State must show that the defendant "(1) knew the location of the gun; (2) had the ability to exercise dominion and control over the gun; and (3) intended to exercise dominion and control over the gun."[47] "It is well-settled that circumstantial evidence may prove constructive possession."[48] And again, it is common for a jury to infer one's knowledge or intention from all the circumstances surrounding a charged act.[49]

(15)   When viewing all of the evidence and all reasonable inferences drawn thereon, in the light most favorable to the State, it is clear that a reasonable jury could find Barrett and Coston *knowingly* possessed the firearm for purposes of their respective charges.   That evidence includes: Coston's status as keyholder and driver, as well as his and Barrett's joint exclusive control over the van at the time; the otherwise inexplicable delay

---

[46]   *Lum v. State*, 101 A.3d 970, 971 (Del. 2014) (quoting *Lecates v. State*, 987 A.2d 413, 425 (Del. 2009) and *State v. Clayton*, 988 A.2d 935, 936 (Del. 2010)).

[47]   *Elmore v. State*, 2015 WL 3613557, *2 (Del. June 9, 2015) (quoting *Triplett v. State*, 2014 WL 1888414, at *2 (Del. May 9, 2014).

[48]   *Triplett*, 2014 WL 1888414 at *2; *Lecates v. State*, 987 A.2d 413, 425-26 (Del. 2009).

[49]   *See Plass v. State*, 457 A.2d 363, 365 (Del. 1983) ("As a matter of common sense, in judging the sufficiency of the evidence as to state of mind, the jury must be able to weigh the conduct of the defendant. Otherwise, in most situations, the only evidence would be the defendant's own self-interested testimony.").

-11-

in the minivan's pullover after officers activated their emergency lights; that the backpack was located almost between Barrett and Coston and within easy reach of either; that no other items were present in the van's passenger area – it was immaculate; that there was no indication that the car was stolen; and that Defendants were then actively engaged in drug crimes for which the jury also found evidence sufficient for conviction.

(16) The fact that these Defendants were engaged in other criminal conduct with the firearm available at arm's length differentiates this case from the many others they cite. Here they were not merely present in a home or vehicle where a firearm happened to be deeply stashed. Instead, they had a firearm and its ammunition within ready grasp while engaged in illegal drug possession and dealing – crimes the firearm could facilitate. A rational jury certainly could infer both Barrett's and Coston's knowledge of and intent relating to this handgun from all of the circumstances present here.

(17) In short, a reasonable jury could infer that the Defendants knowingly had the firearm easily accessible to forward their then-ongoing criminal conduct. It could reasonably infer that the delay in stopping their vehicle allowed the Defendants a chance to conceal the gun from the officers' immediate sight. And, the firearm's close proximity to the

-12-

Defendants and lack of any other items within that part of their vehicle could lead a reasonable jury to find that the Defendants brought the weapon into the car or, at a minimum, knew of its existence. While the State's witnesses could not present physical evidence – *i.e.*, fingerprints or DNA – tying the Defendants to the firearm, the jury reasonably could have found that this was not dispositive of the Defendants' guilt, especially given the experts' testimony that this lack of evidence was a common occurrence with firearm identification. The jury was free to believe or disbelieve that testimony.[50]

(18) In this case, the jury, having heard and seen all of the evidence offered by the State and the defense, could reasonably conclude that Barrett and Coston were in fact guilty of the possessory crimes of which they were convicted.

**IT IS HEREBY ORDERED,** that each Defendant's Motion for Judgment of Acquittal is **DENIED.**

**PAUL R. WALLACE, JUDGE**

Original to Criminal Prothonotary
cc:  Daniel B. McBride, Esquire, Deputy Attorney General
     James O. Turner, Esquire
     John S. Malik, Esquire

---

[50]  *Maddrey v. State*, 975 A.2d 772, 775 (Del. 2009) ("the jury is the sole judge of the credibility of witnesses and is responsible for resolving any conflicts in the testimony") (quoting *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992)).

-13-