## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| v. | )   **ID. No. 1503017606A** |
| | )   **Cr. A. Nos. IN15-03-1439, etc.** |
| JEFFREY R. CLARK, | ) |
| Defendant. | ) |

Submitted: August 31, 2018
Decided: October 1, 2018
Written Decision Issued: January 30, 2019

### ORDER ON DEFENDANT'S AMENDED MOTION FOR JUDGMENT OF ACQUITTAL

This 30th day of January, 2019, having considered Defendant Jeffrey R. Clark's Amended Motion for Judgment of Acquittal (D.I. 240); the State's Response thereto (D.I. 241); Defendant Clark's Reply (D.I. 242); and the record in this matter; it appears to the Court that:

(1) On April 3, 2015, Defendant Jeffrey R. Clark was arrested for multiple charges stemming from the shooting death of Teddy Jackson that had occurred exactly one year earlier.

(2) After a nine-day trial on the indicted charges of Murder in the First Degree, Conspiracy in the First Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person

Prohibited,[1] a unanimous jury found Clark guilty of Attempted Assault in the Second Degree and Conspiracy in the Second Degree.[2] After a long series of intervening post-trial filings and proceedings, Clark filed the present Amended Motion for Judgment of Acquittal under Superior Court Criminal Rule 29(c) alleging insufficiency of the evidence.[3]

(3)    Clark questions just one element essential to his two convictions: "At issue in this motion is the sufficiency of evidence in relation to what kind of harm or injury [ ] Clark attempted to inflict upon Kyle."[4] Specifically, Clark argues that the State failed to prove beyond a reasonable doubt that he intended to cause "serious physical injury" to his target, "Kyle."[5] He contends that the trial evidence of his actions on April 3, 2014, "at best,

---

[1]    Indictment, *State v. Jeffrey R. Clark*, I.D. No. 1503017606A (Del. Super. Ct. Mar. 30, 2015) (D.I. 1).

[2]    Verdict Form, *State v. Jeffrey R. Clark*, I.D. No. 1503017606A (Del. Super. Ct. Sept. 15, 2017) (D.I. 189). The jury acquitted Clark of the two weapons offenses. *Id.*

[3]    Def. Jeffrey R. Clark's Amended Mot. for J. of Acquittal, at 10 (D.I. 240) (Del. Super. Ct. Aug. 1, 2018) [hereinafter "Clark Am. Mot."]. Clark had earlier filed a timely Motion for Judgment of Acquittal under Superior Court Criminal Rule 29(c). (D.I. 193, 194, and 202).

[4]    Clark Am. Mot. at 14. "Kyle," the trial record shows, was the object of Clark's ire on the night of his crimes and Clark's intended target for retaliation. Teddy Jackson was, unfortunately, dressed in a manner similar to "Kyle" that night and became the innocent victim of Clark's and his friends' efforts to exact that retaliation.

[5]    Clark Am. Mot. at 11.

demonstrated an attempt to cause physical injury, not serious physical injury."[6] Thus, Clark suggests, the Court should reduce his attempted felony assault and concomitant felony conspiracy verdicts to convictions for attempted assault third degree and conspiracy third degree and then sentence him accordingly.[7]

(4) The State counters that the evidence, both direct and circumstantial, when viewed in the light most favorable to its case, was sufficient to allow a reasonable jury to convict Clark of the felonies.[8]

(5) The Court here briefly recounts some of the evidence directly relevant to this motion. In the early evening of April 3, 2014, Doris Reyes, the mother of one of Clark's daughters, was confronted by a young man on South Harrison Street in Wilmington.[9] Ms. Reyes had just picked up her children from daycare and was within a block or so of her home. The young man mentioned "a situation he had with [Clark] years ago and told [Ms.

---

[6]    *Id.* at 12.

[7]    *Id.* at 1, 17-20; Def. Jeffrey R. Clark's Reply, at 7 (D.I. 242) (Del. Super. Ct. Aug. 31, 2018) [hereinafter "Clark Rep."] ("Alternatively, Mr. Clark prays that this Honorable Court reduce his convictions to Attempted Assault Third Degree and Conspiracy Third Degree.").

[8]    State's Resp. to Def.'s Mot. for J. of Acquittal, at 9-11 (D.I. 241) (Del. Super. Ct. Aug. 14, 2018) [hereinafter "State's Resp."].

[9]    Sept. 7, 2017 Trial Tr. at 51-53 (D.I. 248).

Reyes] and [their] daughter . . . 'When you see Jeff, say good-bye to him because that will be the last time that you see him.'"[10] This exchange "scared" Ms. Reyes so much that she immediately tried to stop Clark from coming into the city to pick up their daughter. Ms. Reyes spoke to Clark on the phone and described what had happened. On the phone, Clark was "upset" and "aggravated that someone made a threat to [Ms. Reyes] and his daughter."[11] And when he saw her in person shortly thereafter, Clark assured Ms. Reyes she "had nothing to worry about," he would "take care of it . . . If he had to take him in the middle of the street, fight him, then he would. But he would never let any harm come to [Ms. Reyes] and his daughter or him."[12]

(6) That "someone" to be found, fought with, and taken care of was identified by Clark as "a young man by the name of Kyle."[13] As Clark explained it, he was made aware of Kyle's "challenge": that Kyle "wanted to fight and, um, if -- in so many words, basically, he had to come looking for

---

[10]   *Id.* at 53.

[11]   *Id.* at 53-54.

[12]   *Id.* at 63.

[13]   Sept. 12, 2017 Trial Tr. at 74 (D.I. 232).

-4-

me, that it would be more than just that."[14] And so, Clark admits, he "took off running, looking for Kyle."[15]

(7) As Clark himself said, he was then running through the streets and asking any number of random people if they had seen Kyle.[16] To ready for the fight, Clark had stripped to his bare chest, removed his earrings, and taken out his nose ring.[17] By his own account, he was "angry" and "aggressive" and "wanted to fight Kyle."[18] And a reasonable view of the evidence is that Clark had enlisted the help of no less than three of his friends to, at very least, track down Kyle for that purpose.[19]

(8) Clark's actions and demeanor during his quest for Kyle were described by several other witnesses. For instance, one teenager described shirtless Clark in the company of another man hunting for "Kyle" in the area just before Teddy Jackson was shot.[20]

---

[14]     *Id.*

[15]     *Id.* at 77.

[16]     *Id.* at 77-80.

[17]     *Id.* at 77.

[18]     *Id.* at 77-80.

[19]     *See id.* at 76-82, 93-96.

[20]     Sept. 7, 2017 Trial Tr. at 29-47 (D.I. 248); Ct. Exh. 1, Sept. 7, 2017 Trial Tr. at 41-42, 44-45 (D.I. 248) (Witness's statement entered under 11 *Del. C.* § 3507).

(9)     Another witness told of Clark doing the same.[21] This latter witness described Clark as "real aggressive.  He was, like, angry, real angry at something."[22]  And this latter witness explained that Clark said he wanted to find "Kyle" because "Kyle" had "disrespected his baby mom or his mom, one or the other. [Kyle] disrespected someone in his family, mom or baby mom."[23]

(10)     Yet another witness explained that Clark was "upset" about an interaction between "some bull"[24] and Clark's "baby mom."[25]  Clark "wanted

---

[21]     Sept. 6, 2017 Trial Tr. at 8-12 (D.I. 222).

[22]     *Id.* at 10.

[23]     *Id.* at 11.

[24]     According to Urban Dictionary, the relevant definition of "bull" here is that common to the Philadelphia and Wilmington regions: "bull" is a street slang term used for a young male whose name the speaker does not know. *Bull*, URBAN DICTIONARY, http://www.urbandictionary.com/define.php?term=bull (last visited Jan. 30, 2019).  This Court has observed before that "Urban Dictionary is not a helpful or reliable source in most circumstances due to the often vulgar nature of its user-generated content." *Wallace v. Geckosystems Int'l Corp.*, 2013 WL 405414, at *6 n.32 (Del. Super Ct. July 31, 2013). That said, this Court (and others) sometimes find it to be an appropriate source for interpreting slang terms. *See, e.g., id.* (listing cases); *State v. Benally*, 348 P.3d 1039, 1041 n.2. (N.M. Ct. App. 2015) (noting that because Urban Dictionary lacks the quality control measures employed by some other consensus-based websites the Court was citing it "only to demonstrate the common understanding" of the relevant slang term); *Hare v. Richie*, 2012 WL 3773116, at *3 n.5, *4 n.8 (D. Md. Aug. 29, 2012); *United States v. Baca*, 2018 WL 6602216 (D.N.M. Dec. 17, 2018).

[25]     Sept. 7, 2017 Trial Tr. at 7-8 (D.I. 228).

to go find the guy."[26] And Clark said "they were going to do something to [the guy], hurt him or take him out, or something like that."[27] When asked to describe Clark's demeanor as he set off to find "Kyle," the witness said simply: "He's irate, he's upset."[28]

(11) During the prayer conference conducted after all of the trial evidence was presented, Clark moved that the jury be instructed on the lesser offenses of attempted assault third degree and conspiracy third degree.[29] He also agreed that there was a rational basis in the evidence for instructions on attempted assault second degree and conspiracy second degree.[30]

---

[26]    *Id.* at 8.

[27]    *Id.* at 7; *id.* at 9 ("[Clark] said he's going to see if he can find a guy that allegedly said that and he was going to do something to him.").

[28]    *Id.* at 9.

[29]    Sept. 12, 2017 Prayer Conf. Tr. at 2 (D.I. 219). *See* DEL. CODE ANN. tit. 11, § 206(c) (2013) (The Court instructs the jury on a lesser-included offense when "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."). *See also State v. Cox*, 851 A.2d 1269 (Del. 2003) (A trial judge "must give a lesser-included offense instruction at the request of either the defendant or the prosecution—even over the objection of the other party—if the evidence presented is such that a jury could rationally find the defendant guilty of the lesser-included offense and acquit the defendant of the greater offense."); *Lilly v. State,* 649 A.2d 1055, 1061-62 (Del. 1994) (Delaware statute prescribing included offenses is not limited exclusively to standard "statutory elements" definition. Rather, the Court engages a thorough examination of the trial evidence and must instruct the jury on any requested included offense for which "there is a rational basis even when there may be some dissimilarity in the elements necessary to prove the requested included offense.") (citing DELAWARE CRIMINAL CODE WITH COMMENTARY § 206, at 16 (1972)).

[30]    Sept. 12, 2017 Prayer Conf. Tr. at 3-4, 10.

(12)   Clark argued to the jury for misdemeanor attempted assault and conspiracy.[31]   The jury was instructed on charges of Murder First Degree, and—as lesser-included offenses thereof—Murder Second Degree, Attempted Assault Second Degree and Attempted Assault Third Degree;[32] the jury also received instructions also on Conspiracy First Degree and—as lesser-included offenses thereof—Conspiracy Second Degree and Conspiracy Third Degree.[33]   Clark was convicted of Attempted Assault in the Second Degree and Conspiracy in the Second Degree.[34]   Clark now seeks acquittal on those charges and reduction of his convictions to misdemeanors.[35]

---

[31]   *See* Sept. 13, 2017 Trial Tr. at 83-85, 91 (D.I. 198).

[32]   *Id.* at 111-20.

[33]   *Id.* at 120-25.  The jury also was instructed on the attendant weapons charges. *Id.* at 125-30.

[34]   DEL CODE ANN. tit. 21, § 612 (2013) (assault in the second degree); *id.* at § 531 (attempt to commit a crime); and *id.* at § 511 (conspiracy third degree).

[35]   Clark Am. Mot. at 1, 17-20. *See Dennison v. State,* 2007 WL 1837004, at *2 (Del. June 25, 2007) (recognizing this Court's authority to enter a partial judgment of acquittal upon a post-trial insufficiency-of-evidence finding; thereunder, the Court may reduce felony substantive and conspiracy convictions to misdemeanors and sentence accordingly).

(13)   A criminal defendant must meet a high bar to prevail on a Motion for Judgment of Acquittal under Superior Court Criminal Rule 29.[36]   The Court may enter a judgment of acquittal on a specific count only if "the evidence is insufficient to sustain a conviction of such offense."[37]   When evaluating the motion, the Court considers the evidence, "together with all legitimate inferences therefrom . . . from the point of view most favorable to

---

[36]     *See generally Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (explaining that the inquiry on review of a motion for sufficiency of the evidence . . .

> does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'   Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.   Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law. (citations omitted) (emphasis in original)).

*See also Williams v. State*, 539 A.2d 164, 166-69 (Del. 1988) (discussing development of Delaware's sufficiency-of-evidence standard and adoption of *Jackson* standard).

[37]     Del. Super. Ct. Crim. R. 29(a). *See also Vouras v. State*, 452 A.2d 1165, 1169 (Del. 1982).

the State."[38] The Court must be mindful that the jury, not the judge, is the factfinder, and it is "[t]he jury's function is to decide whether the evidence presented at trial proves, beyond a reasonable doubt, that the defendant committed the charged crimes."[39] And so, the standard of review a trial judge employs on a motion for judgment of acquittal is "'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime.'"[40] "For the purpose of reviewing a claim of insufficient evidence there is no distinction between direct and circumstantial evidence."[41]

(14) To prove Clark's guilt of Attempted Assault in the Second Degree, the State had to demonstrate that he had "[i]ntentionally do[n]e[] . . .

[38]     *State v. Biter*, 119 A.2d 894, 898 (Del. Super. Ct. 1955). *See also State v. Council*, 2016 WL 3880781, at *1 (Del. Super. Ct. July 12, 2016) (citing *Biter* and *Vouras*).

[39]     *Washington v. State,* 4 A.3d 375, 378 (Del. 2010).

[40]     *Brown v. State*, 967 A.2d 1250, 1252 (Del. 2009) (emphasis in original) (alteration in original) (quoting *Priest v. State*, 879 A.2d 575, 577 (Del. 2005) (emphasis added) (citation omitted)). *See also Carter v. State*, 933 A.2d 774, 777 (Del. 2007) ("Where a defendant claims his conviction was based upon insufficient evidence, the standard of review is whether the evidence, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt.").

[41]     *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994) (citing *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990)). *See also Council*, 2016 WL 3880781, at *1 ("It is irrelevant if most of the State's evidence is circumstantial since the Court does not distinguish between direct and circumstantial evidence.").

anything which, under the circumstances as [Clark] believe[d] them to be, [wa]s a substantial step in a course of conduct planned to culminate in [his] commission of [Assault in the Second Degree]."[42]

(15) Because Clark was convicted of an attempt to commit the crime of second-degree assault, the jury had to find, beyond a reasonable doubt, that he had taken a substantial step with an intent to cause another person "serious physical injury."[43] And as he was convicted of this attempted assault because "Kyle" was never actually located and injured, the jury had to determine just how much harm it believed Clark had intended. As properly instructed under Delaware law, the jury was "permitted to draw an inference . . . about [Clark's] state of mind from the facts and circumstances surrounding the act that [Clark] is alleged to have done." [44] And the jury could "consider whether a reasonable person acting in [Clark's] circumstances would have had or would have lacked the requisite . . . intention" to inflict serious physical injury.[45]

---

[42]    DEL CODE ANN. tit. 21, § 531 (2013).

[43]    Sept. 13, 2017 Trial Tr. at 115-17 (D.I. 198).

[44]    *See* Sept. 13, 2017 Trial Tr. at 131.

[45]    *Id.*

(16)  Serious physical injury is that "which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ."[46]  In finding that necessary element, the jury could properly infer the type of damage Clark intended from all evidence presented—direct and circumstantial.[47]  The main thrust of Clark's argument is that the jury could not properly base its view of his actions or intent on any other witnesses' testimony.  According to him, the jury could rely only on Clark's own testimony that he wanted to engage in a "fight" and had to eschew any finding of the injury intended because he expressed no quantification of the damage he sought to inflict.[48]

(17)  But, as factfinder, it was the jury's function to decide whether the evidence presented at trial proved, beyond a reasonable doubt, that Clark committed the charged crimes.  "[I]t [wa]s the sole province of the [jury as] fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[49]  The jury had the sole

---

[46]  DEL CODE ANN. tit. 11, § 222(26) (2013).

[47]  *See id.* at § 307.

[48]  Clark Am. Mot. at 14-17.

[49]  *Poon v. State,* 880 A.2d 236, 238 (Del. 2005).

-12-

"discretion to accept one portion of a witness' testimony and reject another part."[50] The jury "need not [have] believe[d] even uncontroverted testimony."[51] And while Clark seems to urge otherwise,[52] this Court when reviewing his sufficiency-of-evidence claim is not free to substitute the Court's own judgment for the jury's assessments in these areas.[53]

(18) No doubt, "serious physical injury" has been the resultant harm from "fights," "altercations," and bodily assaults with or without weapons.[54]

---

[50] *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982).

[51] *Poon*, 880 A.2d at 238.

[52] Clark Am. Mot., at 1-5 (inviting the Court to reassess the credibility of certain witnesses); *id.* at 5-8 (inviting the Court to do the same for Clark as a witness); *id.* at 13-14 (again arguing adverse witness credibility and labeling the witnesses' testimony as "jury-rejected"); Clark's Rep., at 2-3 (claiming neither the jury nor Court could rely on the "highly questionable" testimony of witnesses he says have a "sheer lack of credibility").

[53] *Poon*, 880 A.2d at 238; *Biter*, 119 A.2d at 898 ("The Court is without power to determine the weight of the evidence or where the preponderance lies.").

[54] *See, e.g., Baker v. State*, 344 A.2d 240 (Del. 1975) (beating-induced severe head lacerations and multiple contusions that caused profuse bleeding and a scar were sufficient to affirm a jury's finding of a "serious physical injury"); *Cronin v. State*, 454 A.2d 735 (Del. 1982) (results of weaponless beating that included facial bruising, a bloody nose, a swollen mouth area, swollen cheeks, a cut lower lip, and two knocked-out teeth constituted "serious physical injury"); *Young v. State*, 1992 WL 115175 (Del. May 6, 1992) (injuries from a fight that included at least one fractured toe, two black eyes, extensive bruises, and a laceration above the eyebrow that a treating physician predicted would result in an "unacceptable outcome" supported a finding that the victim had suffered serious physical injury within Delaware's statutory definition); *Fedorkowica v. State*, 2010 WL 424226 (Del. Feb. 4, 2010) (victim who suffered two broken hand bones from defendant's kick during an altercation had sustained "serious physical injury"); *Bradley v. State*, 193 A.3d 734 (Del. 2018) (consequences of the bite, which included profuse bleeding, a scar, skin discoloration and treatment side effects supported finding of "serious physical injury").

(19)   When viewing the totality of the evidence and the reasonable inferences drawn therefrom in the light most favorable to the State, it is clear that a reasonable trier of fact could find Clark intended to cause serious physical injury to another on the evening of April 3, 2014.  The jury was presented evidence of: (a) "Kyle"'s threat; (b) Clark's vow to "take care of it;" (c) Clark's desire to find "Kyle" "to do something to [Kyle], hurt him or take him out, or something like that;" (d) Clark's admitted goal to "fight Kyle;" (e) Clark's frenzied search for "Kyle" in and around the area of Teddy Jackson's slaying; (f) Clark's friends' assistance in his quest for "Kyle;" (g) Clark's preparation for battle with "Kyle;" and (h) Clark's deportment—"upset," "aggravated," "aggressive," "real aggressive," "irate," "angry, real angry"—throughout his hunt. The jury heard the bulk of this evidence firsthand from those who saw Clark that night and recounted his actions and demeanor.

(20)   The jury derived these facts and circumstances from the trial evidence, drew reasonable inferences therefrom, and found Clark was guilty beyond a reasonable doubt of attempted felony assault and the related conspiracy.  No doubt, it was proper to do so.

(21)   Clark admitted at trial and admits now that he sought to cause harm to "Kyle."  He admitted then and admits now that he enlisted the help of

-14-

his compatriots to hunt "Kyle" down for that purpose. Clark differs only on whether those compatriots had their own designs to inflict more harm than he intended, and on whether he knew they were armed with guns to do so.

(22)  *Any* rational factfinder could have found beyond a reasonable doubt that Clark intended not just to inflict "physical injury," but to inflict "serious physical injury." The trial evidence, when viewed in the light most favorable to the State, divulges no intention by Clark to exercise such restraint if and when he found "Kyle." In turn, the jury's guilty verdict is well-supported by a natural, common-sense interpretation of that presented to it[55]

(23)  The Court finds that the jury, having heard and seen all of the evidence offered by the State and Clark, could, and did, reasonably conclude that there was sufficient evidence to support Clark's attempted felony assault and felony conspiracy convictions.

**IT IS HEREBY ORDERED,** that Defendant Jeffrey R. Clark's Motion for Judgment of Acquittal is **DENIED.**

_____
**Paul R. Wallace, Judge**

---

[55]  *See* DEL CODE ANN. tit. 11, § 306(c)(1) (2013) ("A person is presumed to intend the natural and probable consequences of the person's act.").

-15-

Original to Criminal Prothonotary

cc:    Karin M. Volker, Deputy Attorney General
       Albert J. Roop, Deputy Attorney General
       Christopher S. Koyste, Esquire