IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRETT SCOTT, | § | |
| | § | No. 523, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1706021079 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 3, 2019
Decided: April 29, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

## ORDER

This 29th day of April, 2019, having considered the briefs and the record below, and following oral argument, it appears to the Court that:

(1)    A Superior Court jury convicted Brett Scott of second degree murder, attempted first degree robbery, and related charges for the shooting death of Dequan Dukes.  Scott has appealed his convictions, claiming that the evidence at trial did not permit the jury to infer that Scott intended to commit a robbery.  After a careful review of the record, we find that the State introduced sufficient evidence for a rational jury to conclude that Scott intended to commit a robbery, and thus affirm his convictions.

(2)  The evidence at trial, viewed in a light favorable to the State, showed that on July 27, 2017, Raymond Ward convinced Lisa Wagaman, an acquaintance of Dukes', to join with him to steal a bag from Dukes' car where Dukes stored drugs and cash.  Ward planned for Wagaman to get Dukes to park his car in a specific location and distract Dukes while Ward stole the bag from the car.  Ward also enlisted the help of Gregory Sellers and Scott for this scheme.  It was not clear from testimony why Ward needed two additional men for the plan to grab the bag.  Nor was it clear how much Scott knew about the initial plan, although Sellers testified that Scott was informed of "[p]retty much what he picked him up for.  Like, what he was going to do."[1]

(3)  Later that afternoon Wagaman was with Dukes in his car, but decided she no longer wanted to participate and got out of the car.  Scott and Ward approached the car.  Scott first asked Wagaman for a cigarette, and then apparently asked Dukes for one through the passenger window.  The rest of the conversation is unknown.  Sellers testified that Scott reached towards his waistband, and then Dukes shot at Scott and Scott shot back.[2]  Sellers and Ward then took Scott to the hospital, where police apprehended Scott.  Dukes died from his wounds, and Scott was seriously injured.

---

[1] App. to Opening Br. at A198 (Tr. of Trial).
[2] *Id*. at A169.

(4)    Sellers pled guilty to attempted first degree robbery, possession of a firearm during commission of a felony, and conspiracy second degree. Wagaman pled guilty to second degree murder and conspiracy second degree.   Ward went to trial and was acquitted.

(5)    At Scott's trial, Scott moved for judgment of acquittal, claiming that the plan all along was to commit a theft, not a robbery, and thus Scott could not be convicted of attempted robbery first degree.  The Superior Court ruled that the State introduced sufficient evidence to support an attempted robbery conviction:

> Mr. Scott rode to Pine Grove Apartments, with a weapon at one point that was in his waistband, after an occupant of his car coordinated the stealing of drugs and money from the alleged victim at that location. In the light most favorable to the State, the accumulation of those individuals, and their coordinated movement towards confronting the alleged victim constitutes a substantial step in furtherance of theft and what was to be a robbery attempt.  Upon arriving there, evidence supports that Mr. Ward and Mr. Scott together approached the vehicle. Possibly after Codefendant Wagaman has left, that words were exchanged, Mr. Scott reached for his waistband, but was shot at by Mr. Dukes before Mr. Scott was able to shoot his gun and fire.

> ⁕⁕⁕⁕⁕⁕⁕⁕⁕⁕⁕⁕⁕

> Evidence of Mr. Scott traveling to the planned theft site with a gun, his not sneaking up on a car, but rather approaching and confronting the alleged victim with Mr. Ward, exchanging words with an alleged victim without committing a snatch-and-grab, and then reaching for his waistband before the first gun was discharged, would support a rational trier of fact in concluding that both Mr. Scott's state of mind and conduct satisfied all elements of attempted robbery.[3]

---

[3] *Id*. at A495-98.

(6)     Scott has appealed his conviction, claiming that at most he should have been convicted of theft, not robbery. We review *de novo* the Superior Court's denial of Scott's motion for judgment of acquittal to decide "whether *any* rational trier of fact, viewing the evidence in a light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime."[4]

(7)     Theft is defined in 11 *Del. C.* § 841 as "when the person takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it." 11 *Del. C.* § 831(a) defines robbery as when "in the course of committing theft, the person uses or threatens the immediate use of force upon another person."[5] "In the course of committing a theft" includes "any act which occurs in an attempt to commit theft or in immediate flight after the attempt or commission of the theft."[6] Thus, robbery includes a use of, or the threat to use, a weapon at any time during the theft, and not just in the planning stages of the theft.

(8)     In his motion for judgment of acquittal, Scott argued that the evidence at trial showed that "a mere theft was planned and a mere theft was attempted," and "there was no evidence presented as to any substantive planning of a robbery." He

---

[4] *Brown v. State*, 967 A.2d 1250, 1252 (Del. 2009).

[5] The State charged Scott with robbery first degree under 11 *Del. C.* § 832. Section 832 adopts § 831's definition of robbery while including some aggravating factors that Scott does not dispute are present here, including the infliction of physical injury or presence of a deadly weapon.

[6] 11 *Del. C.* § 831(b) ("In addition to its ordinary meaning, the phrase 'in the course of committing theft' includes any act which occurs in an attempt to commit theft or in immediate flight after the attempt or commission of the theft.").

restates the same argument on appeal—the State introduced insufficient evidence that Scott attempted to commit a robbery. Viewed in a light most favorable to the State, however, the evidence at trial satisfied all elements of attempted robbery.

(9) We must presume that Scott was aware of the plan because Sellers testified that he was told "everything" by Ward, meaning "what he picked him up for. Like, what he was going to do."[7] While there are credibility issues with Sellers' testimony, we view it in the light most favorable to the State. Similarly, Sellers testified that Scott reached for his gun during the course of the theft[8]—meaning Scott drew his gun to "[p]revent or overcome resistance to the taking of the property" or during the "attempt to commit theft or in immediate flight after the attempt or commission of the theft."[9] Scott is correct that the State did not present evidence that this was planned as a robbery, as opposed to a theft, but that is not dispositive. Scott knowingly assisted in an attempted theft, while carrying a weapon, and used the weapon "in the course of committing" the theft.

(10) While the State may have gone too far by suggesting a backup plan involving use of force without presenting any supporting evidence, Scott does not substantially dispute that a theft was attempted. The use of force, even if unplanned,

---

[7] App. to Opening Br. at A198 (Tr. of Trial).
[8] *Id.* at A169 (Tr. of Trial) (Sellers) ("I guess, you know, some words were exchanged [between Scott and Dukes], and that's when I seen [Scott] start reaching towards his waistband, and [Dukes], he ended up shooting him.").
[9] 11 *Del. C.* § 831.

as part of the course of events occurring during the attempted theft is sufficient for a reasonable jury to infer that the force was used in connection with, or while attempting to flee from, the attempted theft.

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice